[File No. 6818.]

ASBURY HOSPITAL, a Corporation, Appellant, v. CASS COUNTY, NORTH DAKOTA, a Public Corporation; R. F. Croal, as State's Attorney of Cass County, North Dakota, and His Successors in Office; and Alvin C. Strutz, as Attorney General of the State of North Dakota, and His Successors in Office, Respondents.

(7 NW(2d) 438.)

362

Opinion filed January 2, 1943.   Modified January 25, 1943.

*Nilles, Oehlert & Nilles (Abbott L. Fletcher,* of counsel), for appellant.

*Alvin C. Strutz,* Attorney General, *Wm. R. Pearce,* Assistant Attorney General, and *Ralph F. Croal,* State's Attorney, for respondents.

*Traynor & Traynor, Sinnes & Duffy, Burnett, Bergesen & Haaken-stad, C. L. Young, R. G. Beede* and *Karl Baldwin,* amici curiae.

CHRISTIANSON, J. Plaintiff brought this suit in the district court of Cass county, under the Uniform Declaratory Judgments Act of this state (chap. 237, Laws 1923, Supp. 1925, §§ 7712a1–7712a16), to secure a judicial declaration that certain real property owned by the plaintiff is not subject to the provisions of an initiative measure, adoptetd June 29th, 1932, entitled "An Act prohibiting corporation farming and relating to corporations acquiring and holding real estate not necessary in the operation of their business" (Laws 1933, pp. 494, 495), and amended by chap. 89, Laws 1933, and chap. 111, Laws 1935. The Initiative Measure as amended by chap. 89, Laws 1933, reads as follows:

"That all corporations, both domestic and foreign, except as otherwise provided in this Act, are hereby prohibited from engaging in the business of farming or agriculture." Section 1, chap. 89, Laws 1933.

"That all corporations, both domestic and foreign, who now own or hold rural real estate, used or usable, for farming or agriculture, except such as is reasonably necessary in the conduct of their business, shall dispose of the same within ten years from the date that this Act takes effect, provided that during said ten year period said corporations may farm and use said real estate for agricultural purposes pro-

vided further that the ten year limitation provided by this Section shall be deemed a covenant, running with the title to the land against any grantee, successor of (or) assignee of such corporation, which is also a corporation." Section 2, chap. 89, Laws 1933.

"That any corporation, either domestic or foreign, that acquires any rural real estate, used or usable, for farming or agriculture, by judicial process or operation of law, hereafter, except such as is reasonably necessary in the conduct of its business, shall dispose of such real estate within ten years from the date that it is so acquired, provided that during said ten year period it may farm and use the same for agricultural purposes, provided further that the ten year limitation provided by this Section shall be deemed a covenant, running with the title to the land against any grantee, successor of (or) assignee of such corporation, which is also a corporation." Section 3, chap. 89, Laws 1933.

"That the title and ownership of any real estate acquired, in any manner, by any domestic or foreign corporation, since the approval and adoption of the aforesaid initiated law, is hereby declared to be legal and valid for all purposes, notwithstanding any provisions in said initiated law contained, but subject however, to all of the provisions now contained in said initiated law as hereby amended and re-enacted." Section 4, chap. 89, Laws 1933.

"That nothng in this Act shall be construed to prohibit co-operative corporations, seventy-five per cent of whose members or stockholders are actual farmers, residing in (on) farms or depending principally on farming for their livelihood, from acquiring real estate and engaging in co-operative farming or agriculture." Section 4, Initiated Measure, Laws 1933, pp. 494, 495.

"That in case any corporation, either domestic or foreign, violates any provisions of this Act and fails within the time fixed by this Act to dispose of any real estate after it has acquired title to same, which is not reasonably necessary for the conduct of its business, then title to such real estate shall escheat to the county in which such real estate is situated upon an action instituted by the State's Attorney of such county, and such county shall within one year dispose of same at public auction to the highest bidder, and the proceeds of such sale, after

all expenses of such procedure shall have been paid, shall be paid to the corporation that formerly owned the same." Section 5, Initiated Measure, Laws 1933, pp. 494, 495.

The statute was amended by the legislative assembly in 1935 (Laws 1935, chap. 111) but the provision amended and the Amendment are not involved here.

The plaintiff in its complaint alleges that it is a nonprofit corporation with perpetual existence, organized under the laws of the state of Minnesota; "that it is a corporation of, and subject to the discipline of the Methodist Episcopal Church and is created and exists for religious and charitable purposes solely; that under the laws of the State of Minnesota said corporation has the power to sue in any court and to acquire by purchase or otherwise, hold, enjoy, improve, lease, encumber and convey real and personal property;" that prior to 1925 the plaintiff became the owner of a certain real estate mortgage upon a quarter section of land in Cass county, in this state; that on November 27th, 1925, it became the owner of the real property covered by such mortgage, the same having been conveyed to it by the owner in liquidation and satisfaction of the indebtedness secured by the mortgage; that the plaintiff still is the owner in fee simple of such real property; "that the said real property is farming land used and usable for farming and agriculture;" that plaintiff is not engaged in the business of farming and agriculture, but that since the date of acquisition of such property the same has been farmed, by individuals who are residents of North Dakota, under various farm lease contracts; that on the date the said real estate mortgage was acquired by the plaintiff, and on the date that it acquired title to, and ownership of said real property, plaintiff had the right and power, under its articles of incorporation and the laws of Minnesota, to be and become the owner of such mortgage and of said real property; "that at the time and on the date that plaintiff became the owner of said mortgage and of said real estate, there existed in North Dakota no law or statute restricting or forbidding plaintiff's ownership of said mortgage or of said real estate, and that when said mortgage and said real estate were acquired by the plaintiff, plaintiff had the right under the laws of the state of North Dakota as they then existed, to be and become the full, un-

restricted, and unconditional owner of said mortgage and of said real estate, and to acquire a full, complete, and indefeasible title in and to said property."

The complaint further sets forth the legislative enactments, quoted above, and alleges that the defendant Cass county, the defendant Croal, the duly elected state's attorney of said county, and the defendant Strutz, the duly elected and acting attorney general of the state of North Dakota, unless restrained and enjoined from so doing will enforce such laws and will commence action to the end that the title to such real property shall escheat to the county immediately following July 29th, 1942, in accordance with the provisions of the said initiated measure.

It is further alleged that the plaintiff, since the year 1930, has constantly attempted to sell the real property in question but that it has been unable to sell the same for the amount of the mortgage originally on it, and that it will be unable to sell the land prior to July 29th, 1942; that any sale which plaintiff might be able to make would be substantially below the amount of money plaintiff has invested therein and that any sale of the property that might be made by the county pursuant to proceedings had under the above mentioned legislative enactments would be for less than the amount of the mortgage and that the cost and expense of such action and of such sale would result in further decreasing any amount that might be received upon sale. It is also alleged "that said real estate above described is not necessary for the conduct of the plaintiff's business, excepting in the following respects: Plaintiff is permitted by the laws of the State of Minnesota to make investments of funds not immediately required for its operations and the ownership of said mortgage or mortgages and the subsequent acquisition of title to the lands covered by said mortgages, represents a legal and lawful function and exercise of one of the powers of the plaintiff as a corporation; that the holding of such surplus funds in such investments is a legal and lawful function and power of plaintiff as a corporation and such investments constitute a part of the conduct of its business."

It is further alleged that application and enforcement of said legisla-

tive enactments as against the plaintiff and its said real property, would be violative of rights guaranteed to the plaintiff by § 10 of Article 1, § 2 of Article 4 of the Constitution of the United States, by § 1 of Article 14 of the Amendments thereto, and by their counterparts (§§ 11, 13, 16, and 20) in the Constitution of North Dakota.

It is further alleged that an actual controversy exists between the plaintiff and the defendants as to the applicability of said legislative enactments to the plaintiff and its said real property and as to whether such legislation, if applicable, is violative of the constitutional rights of the plaintiff under the above mentioned constitutional provisions.

Judgment is asked that the said legislative enactments be adjudged to be not applicable to plaintiff or its said land, or to any farm lands that were acquired prior to July 29th, 1932, the effective date of such legislation, or to any lands that were acquired subsequent to that date upon the foreclosure of liens or mortgages that were legally effective prior to that date; that if the court adjudge and declare that such legislation is applicable to the plaintiff and to its property so acquired prior to the enactment of such legislation, that in that event the court adjudge that such legislation is unconstitutional and unenforceable, and that the appropriate judgment be entered to prevent the defendants from instituting any action or proceeding against the defendant under the aforesaid legislative enactments.

The defendants interposed a general demurrer. The court sustained the demurrer. In its order the court ruled that "the subject matter of this action and the facts set forth" in the complaint constitute a proper action for a declaratory judgment, but that such facts do not constitute a cause of action so as to entitle plaintiff to any relief against the application and enforcement of the statute against the plaintiff and its land. The order was accompanied by a memorandum opinion wherein the court considered at some length the various contentions advanced by the plaintiff and held:—that the statute in question is applicable to the plaintiff corporation and the tract of land described in the complaint; and that the statute is not violative of any of the constitutional

provisions invoked by the plaintiff. Plaintiff appeals from the order sustaining the demurrer.

The defendants did not attack the sufficiency of the complaint on the ground that it did not show a controversy properly determinable under the Declaratory Judgments Act. On the contrary, defendants concede that there existed, and still exists, an actual present justiciable controversy between the parties to this action—a controversy involving important and valuable rights affecting the ownership of property belonging to the plaintiff, and that such controversy is properly determinable under the Declaratory Judgments Act. The demurrer was apparenty intended to challenge only the validity of the claims of the plaintiff on the merits of the controversy, namely, the claims of the plaintiff that the provisions of the challenged statute were inapplicable to plaintiff and its real property: First, because the plaintiff and its property were not within the terms of the statute; and, second, that if they were within the terms of the statute that then the statute would be, and is, unconstitutional and void.

The Declaratory Judgments Act provides that courts of record in this State "shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed;" and that "no action or proceedingg shall be open to objection on the grounds that a declaratory judgment or decree is prayed for." Supp. 1925, § 7712a1. It applies to persons "whose rights, status or other legal relations are affected by a statute," and provides that they "may have determined any question of construction . . . arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relation thereunder." Supp. 1925 § 7712a2. The Act requires that "when declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration" (Supp. 1925, § 7712a11), and that "all orders, judgments, and decrees under this act may be reviewed as other orders, judgments, and decrees" (Supp. 1925, § 7712a7). The act "is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." Supp. 1925, § 7712a12.

The Act is intended to provide a method whereby parties to a justiciable controversy may have such controversy determined by a court in advance of any invasion of rights, or breach of obligation. Nashville, C. & St. L. R. Co. v. Wallace, 288 US 249, 77 L ed 730, 53 S Ct 345, 87 ALR 1191; Currin v. Wallace, 306 US 1, 83 L ed 441, 59 S Ct 379; Kariher's Petition, 284 Pa 455, 131 A 265; Borchard, Declaratory Judgments, 2d ed, pp. 280 et seq.; Thompson v. Chilton Co. 236 Ala 142, 181 So 701; Green v. Inter-Ocean Casualty Co. 203 NC 767, 167 SE 38; Sigal v. Wise, 114 Conn 297, 158 A 891, 893; Miller v. Currie, 208 Wis 199, 242 NW 570, 572. "It is intended to relieve litigants of the rule that no rights may be judicially adjudged until a right has been violated (American Nat. Bank & T. Co. v. Kushner, 162 Va 378, 174 SE 777) and to authorize judicial action in actual controversies where such action formerly was not available. Holly Sugar Corp. v. Fritzler, 42 Wyo 446, 296 P 206. But an action or proceeding for a declaratory judgment must involve an actual controversy of a justiciable character, between parties having adverse interests. No action or proceeding lies under the Declaratory Judgments Act to obtain a decision which is merely advisory, or which merely determines abstract questions." Langer v. State, 69 ND 129, 141, 284 NW 238.

In this case there is an actual controversy of a justiciable character between parties having adverse interests. The question in dispute is not abstract and remote, but real and present. The statute has been in existence for more than nine years. The defendants claim that if plaintiff retains ownership of this property until after July 29th, the property will be subject to the provisions of the statute, and may be sold at public auction pursuant to proceedings had under the statute. The defendants assert that they will institute the action prescribed by the statute to bring this about. The plaintiff claims that the statute cannot be constitutionally applied to such real property, and that it may continue to hold ownership thereof without being subject to the proceedings prescribed by the statute. The uncertainty of plaintiff's tenure naturally will interfere with the operation, and especially with the leasing, of the property now. Pierce v. Society of Sisters, 268 US 510, 69 L ed 1070, 45 S Ct 571, 39 ALR 468; Euclid v. Ambler

Realty Co. 272 US 365, 71 L ed 303, 47 S Ct 114, 54 ALR 1016. The trial court was correct in holding that there is presented a cause for determination under the Declaratory Judgments Act. Borchard, Declaratory Judgments, 2d ed, pp. 43, 62, 177, 786, 927, 930, 931, 984, 986. See also Pierce v. Society of Sisters, and Euclid v. Amber Realty Co. supra; Nashville, C. & St. L. R. Co. v. Wallace, 288 US 249, 77 L ed 730, 53 S Ct 345, 87 ALR 1191, supra; Acme Finance Co. v. Huse, 192 Wash 96, 73 P (2d) 341, 114 ALR 1344, and note at pages 1361 et seq.

The plaintiff contends:

(1) That the statute in question here should be construed as applicable only to lands purchased, or acquired upon foreclosure of mortgages that were executed, subsequent to the enactment of the statute; that it should be construed as having no application to lands acquired upon the foreclosure or in liquidation of mortgages executed prior to July 29th, 1932, the effective date of the statute.

(2) That the provision in the statute that land must be disposed of within ten years from the date it was acquired does not apply to a corporation, like the plaintiff, that has authority to acquire, hold and sell real property, or invest its funds in real estate mortgages; that in such case the holding of lands so acquired is necessary in the conduct of the business of the corporation within the purview of the statute.

(3) That if the statute is construed as applicable to the plaintiff and the land in question here, then the statute is unconstitutional because it operates, (a) to impair the obligations of a contract; (b) to deprive plaintiff of vested property rights without due process of law; and (c) it discriminates arbitrarily between two classes of corporations by relieving co-operative corporations, having a membership of a certain class, from the inhibitions placed on other corporations, and that, as a consequence, it confers upon such co-operative corporations privileges that are not granted to others, in violation of § 20 of the Constitution of this state, and denies to the plaintiff privileges conferred upon co-operative corporations, in violation of § 20 of the Constitution of this state and of § 2, Article 4 of the Constitution of the United States; and also denies to plaintiff the equal protection of the laws, in violation of § 1, Article 14, of the amendments to the

Constitution of the United States, and of § 11 of the Constitution of North Dakota.

These contentions will be considered in the order stated:

(1) The contention that the statute should be construed as not applicable to real property that was acquired prior to July 29th, 1932, or to real property that has been acquired pursuant to the foreclosure of a mortgage that was executed prior to July 29th, 1932, is directly contrary to the language of the statute. It will be noted that § 2 of the statute, as quoted above, relates to property owned or held by a corporation at the time the statute became effective, and § 3 relates to real property that is acquired after the statute became effective. This action involves lands that were owned and held by the plaintiff corporation at the time the statute became effective. Section 2 provides: "All corporations, both domestic and foreign, *who now own or hold* rural real estate, used or usable, for farming or agriculture, except such as is reasonably necessary in the conduct of their business shall dispose of the same within ten years from the date that this act takes effect." This language is plain—it requires no construction. This provision was contained in the initiative measure which became effective July 29th, 1932, and retained in the amendatory act enacted by the Legislative Assembly in 1933.

"The legislature must be understood to mean what it has plainly expressed, and this excludes construction. The legislative intent being plainly expressed, so that the act read by itself, or in connection with other statutes pertaining to the same subject, is clear, certain, and unambiguous, the courts have only the simple and obvious duty to enforce the law according to its terms." 2 Lewis's Sutherland, Stat. Constr. 2d ed p 701; State v. Rother, 56 ND 875, 219 NW 574. See also Madden v. Dunbar, 52 ND 65, 201 NW 988.

(2) The contention that inasmuch as the plaintiff was authorized under its articles of incorporation to acquire and hold real property, the plaintiff and the land in question here fall within the exception in the statute, which authorizes corporations to continue to hold such real estate "as is reasonably necessary in the conduct of their business" is likewise untenable. This contention sums to this: That the requirement that a corporation dispose of the rural real estate owned by it,

used or usable for farming or agriculture, within ten years from the effectve date of the Act, does not apply to any real property that was owned by a corporation that had authority under the articles of incorporation to own and hold real property. In other words—according to the contention of the plaintiff the statute would apply only in cases where the owning and holding of real property were ultra vires. The statute is not predicated upon the proposition that the real estate that a corporation is required to dispose of was acquired or is held by the corporation in excess of its charter powers. The statute presupposes that the real estate has been lawfully acquired and is lawfully owned by the corporation. Where a corporation, on the date the statute became effective, owned and held real estate of the character specified in the statute, it is required to dispose of the same within ten years from that date, excepting alone such real estate "as is reasonably necessary in the conduct" of its business. Corporations are organized for the purpose of carrying on and conducting certain specified business or activity. They are granted certain powers to be used to perform the functions for which they are organized. There is an obvious distinction between the objects or business which a corporation is organized to accomplish or conduct and the powers with which it is vested for the purpose of conducting the business or attaining its objects. When the statute provides that there shall be excepted from its operation such real estate "as is reasonably necessary in the conduct of" the business of a corporation, it means such real estate as is reasonably necessary for carrying on the business or activity which the corporation was created to carry on. 6 Fletcher, Cyc. Corp. pp. 170, 171, § 2475; 17 Fletcher, Cyc. Corp. pp. 471–474; General Conference v. Berkey, 156 Cal 466, 105 P 411; Major Creek Lumber Co. v. Johnson, 99 Or 172, 195 P 177; Alpena Portland Cement Co. v. Jenkins & R. Co. 244 Ill 354, 91 NE 480; Friedlander Bros. v. Deal, 218 Ala 245, 118 So 508.

In order for a foreign corporation to be "doing business" or "transacting business" in a state—(within the purview of laws imposing conditions on its right to do business in such state)—"there must be a doing of some of the works, or an exercise of some of the functions, for which the corporation was created and not merely what the corpo-

ration might have authority to do. A distinction, in other words, is to be observed in this connection between the purposes of a corporation and its powers. So the doing of an act which, though within the power of the corporation, is not a part of the business which it was authorized to conduct, is not doing business." 17 Fletcher, Cyc. Corp. pp. 471–474.

In General Conference v. Berkey, 156 Cal 486, 105 P 411, supra, the supreme court of California had occasion to consider a question quite similar to the one under consideration here. The General Conference of Free Baptists was a foreign corporation organized under the laws of Maine. It owned a lot in the city of Sacramento. It sold the lot. The question arose whether the sale of this lot constituted "transacting business" or "doing business" by the General Conference of Free Baptists in the state of California. In the decision in the case, the court said:

"It remains to be considered, then, whether a sale of real estate by such a corporation is a transaction of business by it within the meaning of the constitutional provision above referred to. The phrase 'to transact business,' as used in this provision, is equivalent to the words 'to do business,' found in the statutes of many states, prohibiting a foreign corporation from 'doing business' in such states until it has filed a certificate designating a place of business and a resident agent upon whom process may be served, or complied with other conditions. . . .

"This corporation was certainly not engaged in the business of buying and selling land. As we have said, in another connection, its charter plainly indicates that the power conferred upon it to make such purchase and sale was not granted for the purpose of enabling it to do such acts as a means of making a profit thereon. The buying and selling permitted to it were merely incidental to the carrying on of the main purposes of the corporation. A distinction is to be drawn between the purposes of a corporation and its powers (Floyd v. Perrin, 30 SC 1, 12, 8 SE 14, 2 LRA 242). The purposes of the plaintiff, as defined in the articles of incorporation, are 'religious, missionary, educational and charitable.' As incidental to these purposes, it is granted a variety of powers, i.e., the power to prosecute and defend

suits at law, the power to use a common seal, the power to take and hold for the objects of said corporation any real or personal property, and the power to sell and convey any estate which the interests of the corporation may require to be sold and conveyed. All of these powers are to be exercised in subordination to the main purposes as first declared. The purchase and sale of property by such a corporation is not one of the ends for which it is organized, but is merely a means to enable it to accomplish those ends. Property is to be acquired only for the objects of the corporation, and to be sold only when the interests of the corporation require such sale. The power to sell property by a corporation of this character is as purely incidental to the prosecution of its main purposes as are the other powers enumerated in the charter, as, for example, the power to prosecute and defend suits at law. It it quite generally held that the mere prosecuting or defending of suits by a foreign corporation is not 'doing business,' within the meaning of statutes of the kind we have been discussing."

The language and reasoning of the California court seem quite applicable here.

According to the allegations of the complaint, the plaintiff was incorporated under the laws of the state of Minnesota, and under the laws of that state it "has the power to sue in any court and to acquire by purchase or otherwise, hold, enjoy, improve, lease, encumber and convey real and personal property." Under the laws of Minnesota, and the articles of incorporation it "is a corporation of, and subject to the discipline of the Methodist Episcopal Church and is created and exists for religious and charitable purposes solely." The exact business or activity it was created to conduct does not appear, except in so far as this may be inferred from its name, namely,—that it is a hospital. But the "plaintiff is not engaged in the business of farming and agriculture." The real estate which it owns "is farming land used and usable for farming and agriculture," and "since the date of the acquisition of said property by plaintiff the same has been farmed by individuals who are residents of North Dakota, under the terms of various and sundry farm lease contracts upon the usual terms which prevail in the community in which said land is situated." The "said real estate is not necessary for the conduct of the plaintiff's business,"

except as the investment by the plaintiff of its surplus funds in real estate mortgages, and the subsequent acquisition of lands covered by such mortgages constitute lawful exercise of the corporate powers of the plaintiff, and is a part of the conduct of its business.

The bringing of suits, and the ownership of a tract of rural real estate in this state, rented to individuals "upon the usual terms which prevail in the community in which said land is situated" can hardly be said to constitute solely "religious and charitable" works. The bringing of suits, and the investment of funds (to be utilized in carrying on the religious and charitable work the corporation was created to perform) are but means which the corporation may employ to enable it to do the religious and charitable work for which it was created; but they do not constitute the business or activity which the corporation was created to carry on.

We are agreed that the statute in question here is applicable to the plaintiff and that plaintiff holds the tract of land which it acquired in November, 1925, subject to the provisions thereof. The question therefore presents itself whether the statute as so applied is violative of rights guaranteed to the plaintiff by the provisions of the state and Federal Constitutions which it has invoked. The contention of the plaintiff that the statute, if applied to it and to the tract of land in question, operates to impair the obligations of a contract, to impair plaintiff's vested rights and to deprive it of property without due process of law, is predicated upon the proposition that at the time the plaintiff became the owner of the land it had a right to acquire the same and there was no such restriction upon its right of ownership, tenure or use, as are prescribed by the challenged statute; and that plaintiff has acquired a vested right to continue to own and enjoy such land in the same manner and to the same extent as was authorized by the laws in force at the time it acquired the land.

A corporation may be created only by authority of the sovereign power. 13 Am. Jur. 175, 234, Corporations; 18 CJS p. 404. "Corporations are the creations of the state endowed with such faculties as the state bestows and subject to such conditions as the state imposes." 13 Am Jur 234, Corporations. "A corporation can have no legal existence beyond the bounds of the state or sovereignty which created

it, and, although it may act in another state or country, it cannot do so as a legal or constitutional right but only by the comity and consent of such state or country." 20 CJS p. 12. The Constitution of this State provides that "no charter of incorporation shall be granted, changed or amended by special law, except in the case of such municipal, charitable, educational, penal or reformatory corporations as may be under the control of the state;" but that "the Legislative Assembly shall provide by general laws for the organization of all corporations hereafter to be created and that any such law so passed shall be subject to future repeal or alteration," and that "no foreign corporation shall do, business in this State without having one or more places of business and an authorized agent or agents in the same upon whom process may be served." N. D. Const. §§ 131 and 136.

Subject to the constitutional limitations that a State cannot exclude a corporation engaged in interstate commerce, or a corporation that is an agency or instrumentality of the Federal Government (23 Am Jur 211–214, Foreign Corporations; 20 CJS pp. 32, 33), "a state may prohibit foreign corporations from doing business therein, or it may make the right to do business depend on such terms and conditions as it may in its discretion see fit to impose." 20 CJS p. 30; 23 Am Jur 224, Foreign Corporations; Crescent Cotton Oil Co. v. Mississippi, 257 US 129, 66 L ed 166, 42 S Ct 42; see also Baltic Min. Co. v. Massachusetts, 231 US 68, 58 L ed 127, 34 S Ct 15; Cheney Bros. Co. v. Massachusetts, 246 US 147, 62 L ed 632, 38 S Ct 295; Underwood Typewriter Co. v. Chamberlain, 254 US 113, 65 L ed 165, 41 S Ct 45.

"The corporation being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created. As said by this court in Bank of Augusta v. Earle, 'It must dwell in the place of its creation, and cannot migrate to another sovereignty.' The recognition of its existence even by other States, and the enforcement of its contracts made therein, depend purely upon the comity of those States—a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests or repugnant to their policy. Having no absolute right of recognition in other States, but depending for such recognition and

the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those States may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion." Paul v. Virginia, 8 Wall. (US) 168, 181, 19 L ed 357, 360; Atlantic Ref. Co. v. Virginia, 302 US 22, 26, 82 L ed 24, 28, 58 S Ct 75.

"A foreign corporation doing business in a State through comity or acquiescence, or under a license given without valuable consideration, has no contract binding the State not to exercise its powers to exclude it." 23 Am Jur 224, Foreign Corporations; see also 20 CJS pp. 31 et seq.; 17 Fletcher, Cyc. Corp. pp. 797 et seq. In such case, the state may repeal at any time a statute granting permission to do such business, and may withdraw or revoke such license, and may withdraw its implied consent to a foreign corporation which has been allowed on principles of comity to engage in business therein without express permission and may evict such corporation, provided its action does not operate to deprive the corporation of its property without due process, obstruct or burden "interstate or foreign commerce, or impede business conducted by Federal authority." 23 Am Jur 224, 225, Foreign Corporations; 17 Fletcher, Cyc. Corp. pp. 797, 798; 20 CJS pp. 31 et seq.; National Council v. State Council, 203 US 151, 51 L ed 132, 27 S Ct 46; Crescent Cotton Oil Co. v. Mississippi, 257 US 129, 66 L ed 166, 42 S Ct 42, supra. Of course, where a foreign corporation is admitted to a State, not as a mere licensee, but upon terms and conditions which create a contract between the corporation and the state, the state may not impair the obligations of such contract. But, even where there may be said to be a contract between the state and a foreign corporation, the State may have reserved the power to alter the conditions on which the corporation is permitted to do business, or to revoke the right to do business in the State at all. 23 Am Jur 223, Foreign Corporations.

The right and capacity of a corporation to acquire and own real estate is frequently expressly limited. 6 Fletcher, Cyc. Corp. pp. 670–681.

"Very often, too, there are provisions in the constitutions or statutes which directly or by necessary implication require surplus or unnecessary property to be disposed of by the corporation, within a fixed period of time such as five years, or six years, or ten years, or some other designated number of years." 6 Fletcher, Cyc. Corp. pp. 681, 682.

Some states, by constitutional or statutory provisions, have prohibited foreign corporations from acquiring and holding real property within their limits, or have restricted the right to acquire such property to the purchase thereof at a judicial sale for the purpose of collecting or enforcing a lien or judgment in favor of the corporation. 17 Fletcher, Cyc. Corp. pp. 173, 174; Com. ex rel. Atty. Gen. v. New York, L. E. & W. R. Co. 114 Pa 340, 7 A 756; Wash. Const. Art. 2, § 33; Ky. Const. § 192; German Ins. Co. v. Com. 141 Ky 606, 133 SW 793; First Nat. Bank v. Com. 143 Ky 816, 137 SW 518, 34 LRA (NS) 54, Ann Cas 1912D 378; Com. v. Clark County Nat. Bank, 187 Ky 151, 219 SW 175; Okla. Const. Art. 22, § 2; Okla. Sess. Laws 1907–1908, pp. 196, 197; State v. Prairie Oil & Gas Co. 64 Okla 267, 167 P 756; Wolfe v. State, 163 Okla 180, 21 P (2d) 1067; Neb. Comp. Stat. 1922, §§ 5687, 5690; Lord v. Schultz, 115 Neb 33, 211 NW 210, 62 ALR 489. See also S. D. Const. § 7, Art. 17; State ex rel. Chamberlain v. Hutterische Bruder Gemeinde, 46 SD 189, 191 NW 635; Groo v. Norman & Robinson, 42 App DC 387, 388, 389; Puerto Rico v. Rubert Hermanos, Inc. 309 US 543, 84 L ed 916, 60 S Ct 699.

"Foreign corporations enter a state and transact business therein only with that state's consent, express or implied. It may exclude them entirely, or impose whatever restrictions or conditions it sees fit, provided in so doing it does not violate any provisions of the Federal Constitution or laws. Particularly is this true with reference to real property rights and transactions. For each state has the power, uncontrolled by another, to establish rules regulating the tenure of lands lying within its limits, and the manner of buying and selling them by

persons and corporations under its jurisdiction. And a state may, by statute, expressly prohibit foreign corporations from acquiring and holding real property within its limits, or impose such conditions and restrictions upon the right as it may see fit." 17 Fletcher, Cyc. Corp. pp. 173, 174; Munday v. Wisconsin, 252 US 499, 64 L ed 684, 40 S Ct 365.

Where interstate commerce is not directly affected, a state has the power to exclude all foreign corporations, except such as are agencies or instrumentalities of the Federal Government (Phillips Petroleum Co. v. Jenkins, 297 US 629, 634, 80 L ed 943, 947, 56 S Ct 611); and a state has the power to prohibit any foreign corporation, which it might exclude from the state, from acquiring real property in the state for any purpose (17 Fletcher, Cyc. Corp. 173, 174), even through conveyances executed and delivered in another state. Munday v. Wisconsin, supra. The state might have refrained from enacting laws providing for organization of corporations for any purpose (Phillips Petroleum Co. v. Jenkins, 297 US at p. 634, 80 L ed at p. 947, 56 S Ct 611) or having enacted laws providing for organization of corporations, it might later alter, suspend, or repeal such laws, provided, that in so doing the state observed the constitutional requirements of due process and equal protection of the law, and did not lay a burden upon, or interfere with, interstate commerce, or with corporate agencies or instrumentalities of the Federal Government. N. D. Const. § 131; Comp. Laws 1913, § 4495; Tomlinson v. Jessup, 15 Wall. (US) 454, 21 L ed 204; Greenwood v. Union Freight R. Co. 105 US 13, 26 L ed 961; Missouri P. R. Co. v. Kansas, 216 US 262, 54 L ed 472, 30 S Ct 330; Calder v. Michigan, 218 US 591, 54 L ed 1163, 31 S Ct 122; Polk v. Mutual Reserve Fund Life Asso. 207 US 310, 52 L ed 222, 28 S Ct 65; International Bridge Co. v. New York, 254 US 126, 65 L ed 176, 41 S Ct 56; Ft. Smith Light & Traction Co. v. Board of Improvement, 274 US 387, 71 L ed 1112, 47 S Ct 595; Phillips Petroleum Co. v. Jenkins, 297 US 629, 80 L ed 943, 56 S Ct 611, supra.

Where there is a reservation in the state Constitution of power to alter, suspend or repeal all laws, providing for organization of corporations—such as there is in the Constitution of this state—this reserva-

tion becomes a part of the charter of the corporation (6 Fletcher, Cyc. Corp. §§ 823–825), and it is beyond the power of the legislature to confer upon corporations powers that are not subject to abrogation or change pursuant to the legislative power so reserved. Missouri P. R. Co. v. Kansas, 216 US 262, 54 L ed 472, 30 S Ct 330, supra; Texas & N. O. R. Co. v. Miller, 221 US 408, 414, 55 L ed 789, 795, 31 S Ct 534; Phillips Petroleum Co. v. Jenkins, 297 US 629, 80 L ed 943, 56 S Ct 611, supra. Where there is a constitutional reservation of continued legislative power (such as in § 131 of the Constitution of this state) the matter of the organization of corporations, and the powers to be granted to and exercised by them are subjects of general governmental policy which one legislative assembly may not bargain away or withdraw from the constituional law-making function of a succeeding legislature. Missouri P. R. Co. v. Kansas and Texas & N. O. R. Co. v. Miller, both supra. Obviously, permission or authorization to foreign corporations to enter and do business in the state is no more withdrawn from legislative action than are the charters of domestic corporations. Connecticut Mut. L. Ins. Co. v. Spratley, 172 US 602, 620–622, 43 L ed 569, 575, 576, 19 S Ct 308; Phillips Petroleum Co. v. Jenkins, supra, 297 US at page 635, 80 L ed at page 948, 56 S Ct 611; Waters-Pierce Oil Co. v. Texas, 177 US at pages 43–47, 44 L ed at pages 664, 665, 20 S Ct 518; 23 Am Jur 296–298, Foreign Corporations.

The plaintiff had no express permission to acquire and hold real estate in the state. All activities incident to the acquisition of the real estate in question here and the use and enjoyment thereof were had as a matter of comity. "Comity is a matter of favor and not of right." A state "may by statute modify or withdraw such comity towards a corporation created by, or existing under the laws of another state or sovereign, provided the modification does not come in conflict with the paramount laws of the United States." 17 Fletcher, Cyc. Corp. § 8333, pp. 131–135. It goes without saying that the plaintiff has no greater rights than if it had qualified under the laws relating to the admission of foreign corporations; and mere permission to carry on any activity or to acquire property within the state does not create a contract which will preclude the state from subsequently restricting

the power of foreign corporations to acquire and hold real property, provided that in making such restriction, the state does not deprive the corporation or its stockholders of property without due process or deny the equal protection of the laws. The permission to do business, whether express or implied, does not constitute a contract or create a vested right to continue to hold the property, without restrictions other than those which existed at the time it was acquired. Such permission constitutes a license which the state subsequently may abrogate or change, if in so doing there is no deprival of property without due process or denial of equal protection of the laws.

In considering the nature of an authorization by a state to a foreign corporation to do business, and the power of the state to alter or abrogate such authorization, in Connecticut Mut. L. Ins. Co. v. Spratley, 172 US 602, 43 L ed 569, 19 S Ct 308, supra, the Supreme Court of the United States said:

"Instead of a contract, it was a mere license given by the state to a foreign corporation to do business within its limits upon complying with the rules and regulations provided for by law. That law the state was entirely competent to change at any time by a subsequent statute without being amenable to the charge that such subsequent statute impaired the obligation of a contract between the state and the foreign corporation doing business within its borders under the former act.

"Statutes of this kind reflect and execute the general policy of the state upon matters of public interest, and each subsequent legislature has equal power to legislate upon the same subject. The legislature has power at any time to repeal or modify the act granting such permission, making proper provision when necessary in regard to the rights of property of the company already acquired, and protecting such rights from any illegal interference or injury. Douglas v. Kentucky, 168 US 488, 42 L ed 553, 18 S Ct 199. The cases showing the right of a state to grant or refuse permission to a foreign corporation of this kind to do business within its limits are collected in Hooper v. California, 155 US 648, at 652, 39 L. ed 297, at 299, 15 S Ct 207, 5 Inters. Com. Rep. 610.

"Having the right to impose such terms as it may see fit upon a corporation of this kind as a condition upon which it will permit the corporation to do business within its borders, the state is not thereafter and perpetually confined to those conditions which it made at the time that a foreign corporation may have availed itself of the right given by the state, but it may alter them at its pleasure. In all such cases there can be no contract springing from a compliance with the terms of the act, and no irrepealable law, because they are what is termed 'governmental subjects,' and hence within the category which permits the legislature of a state to legislate upon those subjects from time to time as the public interests may seem to it to require.

"As these statutes involve public interests, legislation regarding them are necessarily public laws, and as stated in Newton v. Mahoning County, 100 US 548, at 559, 25 L ed 710, at 711:

" 'Every succeeding legislature possesses the same jurisdiction and power with respect to them as its predecessors. The latter have the same power of repeal and modification which the former had of enactment, neither more nor less. All occupy, in this respect, a footing of perfect equality. This must necessarily be so in the nature of things. It is vital to the public welfare that each one should be able at all times to do whatever the varying circumstances and present exigencies touching the subject involved may require. A different result would be fraught with evil.' " Connecticut Mut. L. Ins. Co. v. Spratley, 172 US at pages 620–622, 43 L ed pp. 575, 576, 19 St Ct 308.

As has been pointed out, there are constitutional or statutory provisions in many states restricting the right of corporations to acquire and hold real estate and requiring that such corporations dispose of real estate which they have acquired, within a fixed period of time.

No instance has been called to our attention, and none has been found, where such legislation was predicated upon the proposition that the State was without power to require a corporation to dispose of real property that it had acquired before the statute or constitutional provision became effective; and in some of the states, the legislation restricting the right of corporations to hold real property is specifically made applicable as well to property that had been acquired before the legis-

lation became effective as to property subsequently acquired. ' Okla. Const. Art. 22, § 33, and Session Laws 1907–08, p. 197; Neb. Comp. Stat. 1922, §§ 5687, 5690; Ky. Const. § 192; Com. v. Clark County Nat. Bank, 187 Ky 151, 219 SW 175. See also Puerto Rico v. Rubert Hermanos, Inc. 309 US 543, 84 L ed 916, 60 S Ct 699; State v. Prairie Oil & Gas Co. 64 Okla 267, 167 P 756; Wolfe v. State, 163 Okla 180, 21 P (2d) 1067; State ex rel. Collins v. Crescent Cotton Oil Co. 116 Miss 398, 77 So 185; Crescent Cotton Oil Co. v. State, 121 Miss 615, 83 So 680; Crescent Cotton Oil Co. v. Mississippi, 257 US 129, 66 L ed 166, 42 S Ct 42. In Com. v. Clark County Nat. Bank, 187 Ky 151, 219 SW 175, supra, it was contended that inasmuch as the land sought to be escheated had been acquired by the corporation before the adoption of the constitutional provision, "the corporation had a vested right which was unaffected by the adoption" of the new constitution containing the provision as "there could be no impairment of the obligation of contract or rights acquired or vested before the making of the law."

The court of appeals of Kentucky held that the constitutional provision and the statutes enacted pursuant thereto were applicable to lands that had been acquired by a corporation prior to the adoption of the Constitution and the enactment of the statutes, and that the enforcement of such constitutional and statutory provisions against lands which a corporation had acquired prior to the adoption of the Constitution and enactment of the statute did not result in "unconstitutionally" impairing "the contract or vested rights" of the corporation.

We think it clearly follows from the principle announced by the Supreme Court of the United States in Connecticut Mut. L. Ins. Co. v. Spratley, 172 US 602, 43 L ed 569, 19 S Ct 308, supra, and Phillips Petroleum Co. v. Jenkins, 297 US 629, 80 L ed 943, 56 S Ct 611, supra, that the provisions of the statute in question here restricting the power of the plaintiff to hold real estate, used or usable for farming or agriculture, and requiring it to dispose of the same within ten years from the date the act took effect, do not impair the obligations of any contract between the State and the plaintiff, or impair any vested property right of the plaintiff.

The question next presents itself whether such provisions operate to deprive the plaintiff corporation of its property without due process of law. This question must be answered in the negative. The state having the right to restrict the power of the plaintiff and corporations similarly situated as to the acquisition and ownership of real estate within the state, it naturally follows that any legislation which it might enact to carry such policy into effect must have a beginning, and "the Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning." Sperry & H. Co. v. Rhodes, 220 US 502, 55 L ed 561, 31 S Ct 490. Of course, the state could not put its new policy into effect in such sudden and arbitrary manner as to practically sacrifice and confiscate the interest of the corporation in the property that it had been permitted to acquire within the State. In making the change it must give the corporation reasonable time in which to dispose of its property. 17 Fletcher, Cyc. Corp. p. 799. See also State ex rel. Collins v. Crescent Cotton Oil Co. 116 Miss 398, 77 So 185; Crescent Cotton Oil Co. v. State, 121 Miss 615, 83 So 680; Crescent Cotton Oil Co. v. Mississippi, 257 US 129, 66 L ed 166, 42 S Ct 42. The statute gives to corporations like the plaintiff, who held rural real estate at the time the statute became effective, ten years in which to dispose of it before such property becomes subject to the provisions of the statute providing for disposal of the property under the procedure provided by the statute. Clearly the period of time provided by the statute cannot be said to be so unreasonable or arbitrary as to operate to deprive corporations holding land subject to the statute of property without due process of law. See State ex rel. Collins v. Crescent Oil Co.; Crescent Oil Co. v. State, and Crescent Oil Co. v. Mississippi, all supra. Such period is considerably longer than that prescribed in analogous laws in other states. Thus, Oklahoma prescribes seven years, and Kentucky five years (Okla. Const. Art. 22, § 33, and Session Laws 1907–08; Ky. Const. § 192; Com. v. Clark County Nat. Bank, 187 Ky 151, 219 SW 175), and under the Oklahoma and Kentucky laws the corporation receives no part of the proceeds of the sale of lands escheated to the state, but the lands and proceeds of sale thereof become the property of the state.

Appellant contends, however, that the economic depression which

existed at the time the statute was enacted, and which continued there-
after, operated to depress the market value of lands in such degree as
to render it practically impossible for corporations to dispose of their
lands at anything like their actual value within the ten-year period,
and that consequently the application of the statute will deprive the
plaintiff and other corporations owners of land similarly situated of
property without due process. The contention and the argument in
support of it involve the wisdom and justice of the law; but do not
show that the law is violative of the constitutional provisions upon
which plaintiff relies. The validity of a statute must be determined
solely by whether it is within the purview of legislative powers as
limited by the Federal and state Constitutions. 11 Am Jur 803,
Constitutional Law; 16 CJS pp. 471 et seq.; State ex rel. Linde v.
Taylor, 33 ND 76, 156 NW 561, LRA1915B, 156, Ann Cas 1918A
583. The justice, wisdom, necessity, utility or expediency of a law
which is within their powers are for the lawmakers. 11 Am Jur 803,
804 et seq, Constitutional Law; 16 CJS pp. 471 et seq.

A court has no power to declare a statute invalid on the ground of
unjust and oppressive provisions, unless such provisions contravene
the state or Federal Constitution. "The courts are not the guardians
of the rights of the people of the State, except as those rights are
secured by some constitutional provision which comes within the
judicial cognizance." 1 Cooley, Const. Lim. 8th ed p. 345. "The
protection against unwise or oppressive legislation, within constitution-
al bounds, is by an appeal to the justice and patriotism of the people
themselves, or their legislative representatives." Lommen v. Minne-
sota Gaslight Co. 65 Minn 196, 208, 68 NW 53, 54, 33 LRA 437, 60
Am St Rep 450. "The judiciary can only arrest the execution of a
statute when it conflicts with the Constitution." 1 Cooley, Const. Lim.
8th ed, pp. 341, 345. See also Billings v. Illinois, 188 US 97, 102,
47 L ed 400, 403, 23 S Ct 272.

It is contended, however, that the procedure prescribed by the statute
to effect the escheat fails to conform to the requirement of due process.
This contention cannot be sustained. The statute does not purport to
divest a corporation of title to land which it holds beyond the prescribed
period. It makes such holding the ground for an action to effect the

escheat; but the corporation continues to own and hold the property until title thereto is divested by judgment rendered in the action brought pursuant to the statute. 19 Am Jur 399, Escheat, § 33. The corporation must be made a party to the action. It will have full opportunity to be heard in defense. It goes without saying that judgment to effect escheat may be rendered only if the cause of action is established. If the cause is established and judgment to effect escheat rendered, the county must dispose of the land within one year "at public auction to the highest bidder" and the proceeds of the sale, after payment of expenses of the action and of the sale, must be paid to the corporation. It is true the statute does not prescribe the form of notice of sale, or the manner of publication thereof; but it does require sale to be made within a year, and that the sale be a public one. (The sale is predicated upon the judgment effecting the escheat.) The corporation has a direct interest in the sale, and the court has the power to protect the rights of the corporation as to the notice and conduct of the sale, by appropriate provisions in its judgment. Greenwood v. Union Freight R. Co. 105 US at page 19, 26 L ed at page 964; Church of Jesus Christ of L. D. S. v. United States, 136 US 1, 34 L ed 478, 10 S Ct 792.

Plaintiff contends that the statute makes a purely arbitrary and unreasonable discrimination against all general corporations, and in favor of certain co-operative corporations, in contravention of the provision of the Fourteenth Amendment to the Constitution of the United States that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws" and of the requirement of § 11 of the Constitution of North Dakota that "all laws of a general nature shall have a uniform operation."

The contentions cannot be sustained. In passing, it should be noted that it is at least doubtful whether the "equal-protection-of-the-laws" clause of the Fourteenth Amendment may be invoked by the plaintiff. The inhibition in that clause relates only to persons *within the jurisdiction* of the State. The plaintiff has not rendered itself subject to suit in the courts of this State. In Blake v. McClung, 172 US 239, 43 L ed 432, 19 S Ct 187, the Supreme Court of the United States held: "A corporation not created by the laws of a state, nor doing

business in that state under conditions that subject it to process from the courts of that state, is not within the jurisdiction of that state, within the meaning of the constitutional provision that no state shall deny to any person within its jurisdiction the equal protection of the laws." (Syllabus 6), Blake v. McClung, 43 L ed 432.

The rule announced in Blake v. McClung, supra, seems to have been qualified to some degree in Kentucky Finance Corp. v. Paramount Auto Exch. Corp. 262 US 544, 67 L ed 1112, 43 S Ct 636. We deem it unnecessary to determine the effect of this latter decision upon the rule announced in Blake v. McClung, for we are agreed that the statute does not violate any rights that are or would be guaranteed to the plaintiff by the "equality-of-the-laws" clause of the Fourteenth Amendment or the "uniformity of operation" requirement of § 11 of the state Constitution. Neither the "equality-of-the-laws" clause in the Fourteenth Amendment nor the uniformity of operation requirment of § 11 of the state Constitution forbids classification. 12 Am Jur pp. 140 et seq, Constitutional Law; 59 CJ pp. 722 et seq.; Brown v. Steckler, 40 ND 113, 168 NW 670, 1 ALR 753; Peterson v. Panovitz, 62 ND 328, 243 NW 798, 84 ALR 1290; Bratberg v. Advance-Rumely Thresher Co. 61 ND 452, 238 NW 552, 78 ALR 1290.

"Classification is primarily for the legislature which has a wide discretion in respect thereof, and in determining its constitutionality, judicial inquiry does not concern itself with the accuracy of the legislative finding, but only with the question whether it is so lacking in any reasonable basis as to be arbitrary." 16 CJS pp. 1001, 1002.

Obviously, the inherent differences between corporations and natural persons are sufficient to justify classification whereby, for many purposes, corporations are put in one classification and individuals in another. 12 Am Jur 199, Constitutional Law; Crescent Cotton Oil Co. v. Mississippi, 257 US 129, 66 L ed 166, 42 S Ct 42, supra. So, likewise, corporations "may, within reasonable limits, be divided into classes, and each class given such rights, capacities and powers as the legislature may see fit." 12 Am Jur 197, Constitutional Law. Thus, the exempting by the legislature of farmers' mutual insurance companies, organized and doing business under the laws of the State and insuring only farm property, from the regulations of fire insurance

rates imposed upon other insurance companies, does not deny to the corporations subjected to such regulations the equal protection of the laws. German Alliance Ins. Co. v. Lewis, 233 US 389, 58 L ed 1011, 34 S Ct 612, LRA1915C 1189. See also State ex rel. Linde v. Taylor, 33 ND 76, 108, 156 NW 151, LRA1918A 156, Ann Cas 1918A 583. And, the legislature may, without violating the constitutional guaranty of equal protection of the laws, discriminate between life and casualty companies in restricting the period to which such companies may, by agreement, limit the bringing of suits on their contracts. Metropolitan Casualty Ins. Co. v. Brownwell, 294 US 580, 79 L ed 1070, 55 S Ct 538.

The distinctions between general corporations and co-operatives have been held repeatedly to justify classification, and "different treatment" as to each of such classes. United States v. Rock Royal Co-operative, 307 US 533, 563, 83 L ed 1446, 1464, 59 S Ct 993; Northern Wisconsin Co-op. Tobacco Pool v. Bekkedal, 182 Wis 571, 197 NW 936, 945; Chaffee v. Farmers' Co-op. Elevator Co. 39 ND 585, 168 NW 616. See also Brown v. Steckler, 40 ND 113, 168 NW 670, 1 ALR 753, supra; Northwestern Mut. L. Ins. Co. v. Wisconsin, 247 US 132, 62 L ed 1025, 38 S Ct 444; Orient Ins. Co. v. Daggs, 172 US 557, 43 L ed 552, 19 S Ct 281.

The statute in question here authorizes co-operative corporations to acquire real estate and engage in co-operative farming or agriculture, and denies the power to so do to corporations organized under the general corporation laws. We are agreed that in so doing the legislature did not make such arbitrary or unreasonable discrimination as to constitute a denial of the equal protection of the laws or violate the requirement that all laws of a general nature shall have a uniform operation. In short, we believe there is a reasonable basis for the classification made.

The plaintiff contends, however, that, in any event, the provision which limits the right to acquire real estate and engage in farming or agriculture to co-operative corporations, 75 per cent of whose members or stockholders are actual farmers or residing on farms or depending principally on farming or agriculture for their livelihood, is an arbitrary or unreasonable classification and violative of the principle of

equal protection of the laws. This question is not involved and may not properly be considered here. It is an elementary rule repeatedly announced with practical unanimity by the courts of this country, including the Supreme Court of the United States and this court, that a person can question the constitutionality of a statute only when and in so far as it is sought to be applied to his disadvantage. Rindge Co. v. Los Angeles County, 262 US 700, 67 L ed 1186, 43 S Ct 689; Minot Special School Dist. v. Olsness, 53 ND 683, 696, 208 NW 968, 45 ALR 1337; Premier-Pabst Sales Co. v. Grosscup, 298 US 226, 80 L ed 1155, 56 S Ct 754; Henneford v. Silas Mason Co. 300 US 577, 81 L ed 814, 57 S Ct 524; 16 CJS pp. 161, 162. "One attacking the constitutionality of a statute is not the champion of any rights except his own." Henneford v. Silas Mason Co. supra.

"One may attack the constitutionality of a statute only when and so far as it is being or is about to be applied to his disadvantage; and to raise the question he must show that the alleged unconstitutional feature of the statute injures him and so operates as to deprive him of a constitutional right." 16 CJS pp. 161, 162.

In Premier-Pabst Sales Co. v. Grosscup, supra, the Supreme Court of the United States said: "We have no occasion to consider the constitutional question, because it appears that the plaintiff is without standing to present it. One who would strike down a state statute as obnoxious to the Federal Constitution must show that the alleged unconstitutional feature injures him."

The plaintiff is not a co-operative corporation. It is not engaged in farming or agriculture. It cannot be injured by the provisions of the statute which discriminates in favor of co-operative corporations "75 per cent of whose members or stockholders are actual farmers, residing on farms or depending principally on farming for their livelihood," and against co-operative corporations 75 per cent of whose members or stockholders are not "actual farmers, residing on farms or depending principally on farming for their livelihood." According to the allegations of the plaintiff's complaint, injury is threatened to it only under the provisions which required corporations who had acquired rural real estate, used or usable for farming, at or prior to the effective date of the statute, to dispose of such real estate within ten years thereafter.

The plaintiff also contends that the statute is violative of § 2 of Article 4 of the Constitution which provides that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." This contention is clearly devoid of merit. It is settled beyond controversy that a corporation is not a citizen within the meaning of § 2 of Article 4, of the Federal Constitution or of § 1 of Article 14 of the Amendments to the Federal Constitution as to the privileges and immunities of citizens. Orient Ins. Co. v. Daggs, 172 US 557, 43 L ed 552, 19 S Ct 281, supra; Waters-Pierce Oil Co. v. Texas, 177 US 28, 45, 44 L ed 657, 664, 20 S Ct 518; 12 Am Jur 100, Constitutional Law; 23 Am Jur 259, Foreign Corporations; 8 Fletcher, Cyc. Corp. p. 449.

It follows from what has been said that the order appealed from is correct. It must be and it is affirmed. The case is remanded to the district court for further proceedings conformable to law.

MORRIIS, Ch. J., and NUESSLE and BURKE, JJ., and MILLER, Dist. J., concur.

BURR, J., being disqualified, did not participate, HON. HARVEY J. MILLER, Judge of Sixth Judicial District, sitting in his stead.