THEODORE T. LOY, for the use and benefit of Union Securities Company, a Corporation, Respondent, v. CHRIST G. KESSLER, et al. and Christ G. Kessler, Jack T. Helm, Jr., also known as Jack T. Helm, and Gustav Helm, Appellants.

(39 NW2d 260)

Opinion filed August 26, 1949.  Rehearing denied October 19, 1949

*Mackoff, Kellogg & Mugli* and *Floyd B. Sperry,* for appellants.

*W. H. Esterly* and *Sullivans, Kelsch & Lord,* for respondent.

742

MORRIS, J. This action was commenced by the Union Securities Company, a corporation, to quiet title to eighty acres of land in Mercer County against five defendants. Voegele and Mercer County defaulted. The defendants Kessler, Jack T. Helm and Gustav Helm answered setting up among other things that the deed under which plaintiff claimed title was champertous and void because it was given in violation of Sections 12–1714 and 12–1719, RCND 1943. The plaintiff then moved to amend the complaint by causing it to appear that the action was brought in the name of Theodore T. Loy for the use and benefit of Union Securities Company, a corporation plaintiff, and by making appropriate and consistent changes in the allegations of the complaint to conform to the new title, among them being the allegation, "That at the time of the execution of said deed, one Ben Voegele, one of the Defendants herein, was in adverse possession of said premises, and that said Theodore T. Loy for the year immediately prior to the execution of said deed, had not collected the rents or profits from said premises, and had not been in possession thereof, and that the said Theodore T. Loy is bringing this action for the use and the benefit of the grantee of said deed, to-wit; Union Securities Company; a Corporation."

The amendment was allowed after hearing and over the opposition of the defendant Kessler and the two Helms. Voegele and Mercer County being then in default were not served with the notice of motion and made no appearance in the proceedings concerning the amendment. They did not appear further in the action and judgment was not rendered against them. The defendant Kessler and the Helms demurred to the amended complaint upon the grounds that the plaintiff has not legal capacity to sue and that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was overruled with leave to answer. They answered the amended complaint and set up several defenses. They first allege that Mercer County acquired a tax title to the property on the 1st day of October 1939

which it sold on contract to Ben Voegele in the fall of 1940. Voegele in turn sold his contract to the defendant Kessler, who pursuant thereto on the 10th day of November 1941, received a tax deed from the county. On the 8th day of March 1943, Kessler conveyed the property by warranty deed to the Helms.

The answering defendants further plead that the deed by which plaintiff claims title as use plaintiff and upon which the right to bring the action in the name of Loy is based, is a champertous conveyance and is void under the provisions of Sections 12-1714 and 12-1719, RCND 1943. They also plead that the deed is void as being contrary to public policy and that the use plaintiff is barred from maintaining the action by estoppel and laches.

The trial court found against defendants upon all points wherein they challenge the right of the plaintiff to bring and maintain the action. He also found that the tax deed to Mercer County upon which the defendants' claim of title is based is void for failure to give a legal notice of expiration of the period of redemption, and ordered that title be quieted in the plaintiff. The defendants appeal from the judgment entered pursuant to this order and also appeal from and seek review of the intermediate orders allowing the plaintiff to amend the complaint and the order overruling the demurrer to the amended complaint.

The owner of the property in question in 1926 appears to have been one E. T. Hunkins, who failed to pay the taxes for that year and for subsequent years. The taxes were bid in by Mercer County. On May 18, 1939 the auditor of Mercer County issued a purported notice of expiration of period of redemption. The taxes were not redeemed on or before October 1, 1939 as prescribed in the notice of redemption. A tax deed was issued to the county on March 1, 1940, whereupon the county took possession and rented the property. On February 5, 1941 the county sold the property on contract to Ben Voegele who in turn sold his interest to the defendant Christ E. Kessler, who paid up all the taxes and received a deed from the county on November 10, 1941. On March 8, 1943, Kessler conveyed the property by warranty deed to Jack T. Helm and Gustav Helm.

On March 4, 1939, E. T. Hunkins, unmarried, executed a warranty deed to Theodore T. Loy. On July 24, 1941, Loy and his

wife issued a quit claim deed to Union Securities Company, a corporation. At the same time he delivered to the Union Securities Company his unrecorded deed from Hunkins. Both deeds were recorded on January 19, 1944. It does not appear that Loy ever took possession of the property. The Union Securities Company appears to have been represented in the various transactions connected with this land by R. G. Sailer, who was Secretary-Treasurer and General Manager of the Corporation. In the spring of 1945 Sailer advised the defendant Jack T. Helm that he claimed an interest in the land. Later on May 24, 1945, plaintiff's attorney advised Mr. Helm by letter that the property belonged to Sailer.

We will first consider the points in which the defendants challenge the right of the plaintiff to bring this action. The amended complaint in effect pleads that the deed from Loy to the Union Securities Company is champertous as being violative of Section 12–1714, RCND 1943. The defendants also contend that the deed is champertous and further maintain that it is absolutely void and that the Union Securities Company may not assert title thereunder either in its own name or in the name of Loy for its benefit. This point was exhaustively briefed and vigorously argued on both sides. We deem it advisable here to review at some length the history of our champerty statutes and the decisions under them which construe and apply these statutes in civil actions.

It was the common law rule subsequently embraced in the statute, 32 Henry VIII, that conveyances of real estate held in adverse possession were void. Various reasons and purposes have been given for this rule, among them being that it discouraged litigation and protected the small man against the more powerful who by reason of his position was able to purchase rights of action and oppress the weaker through his ability to maintain litigation. The reason has also been given that a grantor out of possession was unable to invest the grantee by livery of seizin and that the grantor being out of possession was held to have only a right of action which was not assignable at common law.

In the Compiled Laws of Dakota Territory 1887, we find that Section 3303 provided, "Every grant of real property, other than one made by the territory, or under a judicial sale, is void, if at the time of the delivery thereof, such real property is in the actual possession of a person claiming under a title adverse to that of the grantor."

While Section 4870 provided in part, "an action may be maintained by a grantee of land in the name of a grantor, when the grant or grants are void by reason of the actual possession of a person claiming under a title adverse to that of the grantor at the time of the delivery of the grant, and the plaintiff shall be allowed to prove the facts to bring the case within this provision."

After North Dakota was admitted to statehood Chapter 74 of the Laws of 1893 provided for the appointment of commissioners to revise the laws and submit a report to the legislative assembly. The result was the adoption of the Revised Codes of 1895. During the course of the revision Section 3303 and the quoted part of Section 4870 of the Compiled Laws of 1887, were omitted.

Section 6389, Compiled Laws of 1887, provided, "Every person who buys or sells, or in any manner procures, or makes or takes any promise or covenant to convey any pretended right or title to any lands or tenements, unless the grantor thereof, or the person making such promise or covenant has been in possession, or he and those by whom he claims have been in possession of the same, or of the reversion and remainder thereof, or have taken the rents and profits thereof for the space of one year before such grant, conveyance, sale, promise or covenant made, is guilty of a misdemeanor."

This section became 7002, Revised Code 1895, and is now Section 12-1714, RCND 1943.

In Kreuger v. Schultz, 6 ND 310, 70 NW 269, it is said of Section 3303 Compiled Laws 1887, "This section, ever of doubtful utility, has been dropped from the Revised Code of 1895. . . . . The nature and purpose of such statutes are fully discussed in Sedg. & W. Tr. Title Land, Section 190. As it is there stated, these statutes have certainly outlived their usefulness; hence

courts are entirely unwarranted in giving increased latitude to their operation."

In Galbraith v. Payne, 12 ND 164, 96 NW 258, the court in commenting on the omission from the 1895 Revised Code, says "These omissions did not effect the law as it heretofore existed. The provisions of Section 3303 and that part of Section 4870 which was omitted were merely legislative declarations of the common law as it existed independent of those provisions. As has been seen, where the common-law doctrine prevails—and concededly it was in force in this state—a grant, under the circumstances described in Section 3303, is void. Further, its invalidity extends only to the adverse possessor, and the grantee may maintain an action in the name of the grantor. That authority existed independent of section 4870. It is patent, therefore, that the mere omission of these provisions was without effect or special significance. No abrogating statute has ever been enacted in this jurisdiction. On the contrary, sections 7001, 7002, and 7003 of the Penal Code, above referred to, were retained, and are still in force. Section 7002 makes it a misdemeanor for any person to convey any pretended title to lands, unless he or those under whom he claims have been in possession or have taken the rents and profits for one year before his conveyance. The deed upon which the plaintiff relies to establish his title was executed in violation of this section. It was, therefore, void, as contrary to the express provisions of the statute, and contrary to the policy of the law of this state as expressed in said section."

It is also said, "An examination of the authorities will show that, while a deed of a disseisee conveys no title which can be enforced in the name of the grantee against the disseisor or his privies, they go no further. It is now held that such deed is good against the grantor, and that it entitles the grantee to an action to recover the land, in the name of the grantor, but to his own use, even against the disseisor. (Citations omitted.) By executing and delivering the deed the grantor impliedly authorizes the grantee to use his name in an action to recover the land, and for that purpose the grantor is a real party in interest within

the meaning of the statute requiring every action to be prosecuted in the name of the real party in interest."

The law thus stated is incorporated in paragraph 3 of the syllabus by the court. The defendants challenge the correctness of this point and further assert that it is dictum and constitutes no binding precedent.

Galbraith v. Payne was followed in Schneller v. Plankinton, 12 ND 561, 98 NW 77, wherein it was said, "The interests of the defendant can be litigated and determined only in an action prosecuted in the name of the plaintiff's grantor."

In Conrad v. Adler, 13 ND 199, 100 NW 722, it was held that a deed to property that was possessed adversely to the grantor was void. The court reached a similar conclusion in Brynjolfson v. Dagner, 15 ND 332, 109 NW 320, 125 Am St Rep 595, and held that a deed was void which was given while land was in actual possession of one claiming title under a void foreclosure sale.

In Burke v. Scharf, 19 ND 227, 124 NW 79, the holding of Galbraith v. Payne that a deed falling within the prohibition of the statute is void as to persons in possession was reexamined and upheld by three members of the court. One Judge filed a strong dissenting opinion and the fifth member of the court expressed no opinion upon that question.

Galbraith v. Payne was followed in Murray v. Lamson, 21 ND 125, 128 NW 1039, and in Hanitch v. Beiseker, 21 ND 290, 130 NW 833. In the latter case Lynn brought the action in the name of Hanitch for the use and benefit of Lynn against the defendant T. L. Beiseker. The court said, "When Lynn drew his complaint he was obliged to elect whether he would bring an action in his own name, or bring an action in the name of his grantor for his own use and benefit. This election must be based upon the facts in the case peculiarly within his knowledge. If he brought the action in his own name, and Beiseker could show that Hanitch had been out of possession and had collected no rents for more than one year prior to the time of the deed, then Lynn's deed from Hanitch would be champertous and void as to any person in possession under color of title, as held by this court in the case of Galbraith v. Payne."

In paragraph 4 of the syllabus it is said, "Courts will protect the use plaintiff in the control of the suit, and the nominal plaintiff cannot end the litigation by a deed to the defendant, after he has transferred his title to the use plaintiff."

In Cotton v. Horton, 22 ND 1, 132 NW 225, it was held that a deed given by one out of possession and who had not received the rents or profits from the premises for more than a year just previous to the execution of the deed was void as against one in possession under color of title of a foreclosure sale. Munroe v. Donovan, 31 ND 228, 153 NW 461, involved an action to quiet title brought by a use plaintiff in the name of his grantors under the authority of Galbraith v. Payne. The decision turns on the validity of a tax deed and the right of the use plaintiff to maintain the action in his grantor's name is not discussed.

The rule of Galbraith v. Payne, including the practice of bringing suit by the use plaintiff in the name of his grantor was impliedly if not directly approved in the recent cases of Robertson v. Brown, 75 ND 109, 25 NW2d 781 and Morehouse v. Paulson, 75 ND 524, 28 NW2d 616.

Galbraith v. Payne is cited and held inapplicable under the facts in these cases: Purcell v. Farm Land Company, 13 ND 327, 100 NW 700; State Finance Co. v. Beck, 15 ND 374, 109 NW 357; State Finance Co. v. Bowdle, 16 ND 193, 112 NW 76; Brown v. Comonow, 17 ND 84, 114 NW 728; D. S. B. Johnston Land Co. v. Mitchell, 29 ND 510, 151 NW 23; Knowlton v. Coye, ante, 478, 37 NW2d 343.

In Sailer v. Mercer County, 75 ND 123, 26 NW2d 137, we held that deeds executed in violation of Section 12–1714, RCND 1943 are void as to persons in adverse possession. The defendants approve and embrace this rule but they would bisect the decision of Galbraith v. Payne and discard the further holding that an action may be maintained against the claimant in adverse possession in the name of the grantor for the grantee's use. This portion of the opinion, they argue, is dictum and was not necessary to a decision of the case and cannot be made the basis for the application of the rule of stare decisis.

"A rule of property long acquiesced in should not be overthrown except for compelling reasons of public policy or the

imperative demands of justice." Smith v. Glen Alden Coal Co. 347 Pa 290, 32 A2d 227.

Galbraith v. Payne has been followed as to the practice of bringing the action in a number of subsequent cases. The legislature has met at least biennially since Galbraith v. Payne was decided in 1903, and has made no change with respect either to the rule of champerty therein announced or the right of a grantee out of possession to maintain an action in the name of his grantor against an adverse possessor. We could well rest the decision at this point on the rules of stare decisis and legislative acquiescence, but we prefer to add that it is our conviction that when this court decided that the common law doctrine which condemns as void a grant of land held adversely under claim of title was perpetuated by the Revised Codes of 1895, it was impelled to hold that there was also perpetuated the correlative doctrine that the grantee might maintain an action in the grantor's name against the party in adverse possession. .

The appellants point out that Section 12–1714, RCND 1943 makes both the grantor and the grantee guilty of a misdemeanor and they argue that a contract violative of that section cannot be made the basis of a judicial proceeding, either by or in behalf of either party to the illegal act. It is generally the law in this state and elsewhere that a contract to do an act forbidden by express provision of law is unenforcible and the courts will not lend their aid to parties engaged in such an illegal transaction. Erickson v. North Dakota State Fair Asso., 54 ND 830, 211 NW 597. This rule is usually applied when the dispute is between parties to the illegal contract. The situation here is somewhat different. The controversy is not between the parties to the contract. The contract that the statute penalizes is the deed from the grantor to the grantee. The party in possession seeks to use the forbidden contract for his own enrichment and advantage as against the parties thereto. He would add to the criminal penalty provided by the statute an exaction for his own private benefit. The courts early recognized the injustice inherent in such a situation with the result that the use plaintiff was permitted to maintain an action in the name of his grantor.

In the early Massachusetts case of Brinley v. Whiting (Mass) 5 Pick 348, the court considered the same defense that is sought to be interposed here and stated. "The whole of the defence, as stated in the bar, amounts to this:—that true it is the demandant was disseised as he declares, but he has no right to recover possession, because he has attempted to part with his right and interest, and that under circumstances which render his conveyance illegal, and the deed null and void. The obvious conclusion from these premises would be, that the demandant's title remained as before, and that he should recover possession against the disseisor or any claiming under him.

"But it is stated that the present suit is brought at the instigation of the grantees in that deed, and at their instance and expense, with a view to carry into effect the unlawful bargain, and it is supposed that on this account the action ought not to be maintained.

"It would certainly seem that the law ought not to lend its aid to the parties to an illegal contract, to carry it into execution, and yet there are difficulties in maintaining this plea which we see not how to overcome.

"To establish such a defence would be in fact to transfer the title of the land from the demandant to the tenant, by way of punishment for the attempt to convey it unlawfully; but neither the statute of 32 Hen. 8, nor the common law, establishes such penalty; nor do we find that either in England, where the offence probably was common at and after the passing of the statute, or in this commonwealth, where the principles of that statute have been so far adopted at least as that the buying of disputed titles under circumstances which show an intent to disturb men in their possession has been held criminal, or in New York, where the legislature has re-enacted the statute of 32 Hen. 8 almost in its very words, such a consequence has been attributed to the offence."

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

"The cases cited by the tenant's counsel, except those which go to show that the facts detailed in the plea amount to maintenance, which is not denied, are, we think, inapplicable to the question.

They prove generally, that a man suing for the fruits of a vicious or unlawful contract, shall not be sustained in court. As in the case of goods sold to one intending to smuggle them into the country, in fraud of the revenue, the vendor knowing of the intent of the purchaser, and other cases of similar import, the vendor shall not recover, because he aids and abets in the unlawful act. The action is between two guilty parties, and neither shall prevail in law in an action against the other. But in the case before us, the owner of the land does an act which is unlawful and void. He is subject to punishment, but a forfeiture of his land makes no part of the punishment. Nor can the tenant who has wrongfully dispossessed him, in any way acquire a right to the land by reason of the offence committed by the owner. In the cases cited the plaintiff proceeds on a contract founded on a violation of law; in the case before us there is no contract; the demandant complains of a wrong done him by the tenant, and the tenant would purge it by showing that his adversary had done wrong to the public. There is neither reason nor logic in this. True it is, the tenant avers that the action is brought for the benefit of the party to the unlawful contract, and that he will immediately avail himself of the fruits of this suit, and thus defeat the intent of the law; but the law declares the deed void, and cannot anticipate that the parties will hereafter make it effectual. The grantees can never set it up as the evidence of a conveyance to them; if it operates at all, it can only be by way of estoppel against the grantor. If they should have to bring a suit against the tenants in their own names, the deed will be inoperative."

This continued to be the law of Massachusetts until 1891 when a statute was passed making a conveyance of real estate effectual to transfer title as against adverse possession. That case was also followed in Paton v. Robinson, 81 Conn 552, 71 A 730, wherein it is said, "A deed of lands adversely possessed is void only as to the person in possession, and those claiming in privity with him, as to the grantor, and his heirs it is good, by way of estoppel, and the grantee may sue for and recover possession in the name of the grantor, and then protect himself in his title under such deed. Livingston v. Proseus, (NY) 2 Hill 526;

Williams v. Jackson (NY) 5 Johns 489; Brinley v. Whiting (Mass) 5 Pick 348."

Again in Morehouse v. Wood, 93 Conn 113, 105 A 349, the court stated, "In this state and elsewhere it is a recognized principle of law that the grantee under such a void deed may, in the name of his grantor, sue for and recover possession of land from one who unlawfully ousted his grantor, or such grantor may sue and recover possession upon his own motion."

Oklahoma has the same statute as our Section 12–1714, RCND 1943 and in a long line of cases has given it the same construction as that announced in Galbraith v. Payne, including the right of a use plaintiff to maintain an action in the name of his grantor. The leading Oklahoma case is Gannon v. Johnston, 40 Okla 695, 140 P 430, Ann Cas 1915D, 522. In that case the suit was first brought in the name of the grantee and the petition was afterward amended making the grantor a party plaintiff. The court held that where land in the adverse possession of another is conveyed, the grantee may maintain an action in the name of the grantor to recover the land from the adverse holder and it was not error to permit the grantor to be made a party plaintiff by amendment.

In Brady v. McCrory, 108 Okla 40, 233 P 734, it is said, "A grantor not in possession, however, may prosecute an action for the benefit of his grantee, or the grantee may prosecute the action in the name of his grantor, or may associate himself with his grantor in the action."

See also Smith v. Jos. W. Moon Buggy Co. 66 Okla 333, 169 P 875; Slyman v. Alexander, 126 Okla 232, 259 P 224; Cox v. Fowler, 141 Okla 110, 283 P 995; Twyford v. Stephens, 183 Okla 534, 83 P2d 578.

This action was originally commenced in the name of Union Securities Company, a corporation plaintiff. After an answer had been interposed setting up the defense of champerty, the plaintiff made a motion for leave to file an amended complaint. The notice of motion was accompanied by a copy of the proposed amended complaint wherein it appears that the title was amended by substituting as plaintiff Theodore T. Loy, for the use and

benefit of Union Securities Company, a Corporation, and by setting forth in the body of the pleading that at the time of the execution of the deed from Loy to the Union Securities Company one of the defendants, Ben Voegele, was in adverse possession of the premises and that Loy for the year immediately prior to the execution of the deed had not collected rents or profits from the premises and had not been in possession thereof, and that Loy was bringing the action for the use and benefit of the grantee. The amendment was allowed over the objection of the answering defendants, Christ G. Kessler, Jack T. Helm, and Gustav Helm. The defendants Ben Voegele and Mercer County had not answered the original complaint and were in default. These defendants were not served with notice of motion to amend. After the amendment was allowed the answering defendants demurred. The demurrer was overruled and they thereupon filed an amended answer. The answering defendants predicate error upon the allowance of the amended complaint and the order overruling their demurrer thereto.

Under Section 28–0737, RCND 1943, the court may, before or after judgment, in furtherance of justice and on such terms as may be proper, allow the amendment of any pleading by adding or striking out the name of any party, and may permit the insertion of other allegations material to the cause. Under this section courts are vested with wide discretionary power in the matter of granting amendments to pleadings in furtherance of justice. Hanson v. Cool, 70 ND 302, 293 NW 884; Hart v. Rigler, 70 ND 407, 295 NW 308; Myers v. Hagert Construction Co. 74 ND 435, 23 NW2d 29.

In Oklahoma when the grantee of a deed is met with the defense that the deed is champertous it is the approved practice to permit the grantor to be made a party plaintiff by amendment. Gannon v. Johnston, 40 Okla 695, 140 P 430, Ann Cas 1915D, 522; Slyman v. Alexander, 126 Okla 232, 259 P 224; Crawford v. LeFevre, 177 Okla 508, 61 P2d 196; Concho Washed Sand Company v. Sallstrom, 195 Okla 302, 157 P2d 176; Rock Island Improvement Co. v. Davis, 195 Okla 513, 159 P2d 728.

In this case the amendment was made sometime before trial. No surprise is claimed. The nature of the action remains the same whether it is brought in the name of the grantee or in the name of the grantor for the use and benefit of the grantee. The allowance of the amendment was within the sound discretion of the trial court and no abuse of that discretion appears. The fact that the defendants Voegele and Mercer County who defaulted as to the original complaint were not made parties to the proceeding to amend in no way affects the rights of the answering defendants. Doane v. Houghton, 75 Cal 360, 17 P 426; Service v. Farmington Sav. Bank, 62 Kan 857, 62 P. 670. It does not appear that the defendants so omitted were necessary parties to the issues between the plaintiff and the answering defendants.

The demurrer was based on the ground that the plaintiff has not legal capacity to sue and that the complaint does not state facts sufficient to constitute a cause of action. What we have heretofore said in analyzing the decision of Galbraith v. Payne and in considering the motion to amend completely covers and disposes of the challenges raised by the demurrer. The trial court committed no error in overruling it.

The appellants further contend that the deed in question is champertous as being procured in violation of Section 12–1719, RCND 1943, which provides that "Every attorney and other person prosecuting a suit or demand in person, who, either directly or indirectly, buys or is interested in buying any evidence of debt or thing in action with intent to bring suit thereon, is guilty of a misdemeanor."

Without determining whether a deed may be considered "evidence of debt or thing in action" we hold that the statute does not apply in this case because it does not appear that the deed was procured "with intent to bring suit thereon." This statute applies equally to attorneys and other persons. We stated the applicable rule in Starke v. Wannemacher, 32 ND 617, 156 NW 494, 4 ALR 167, when we said this: "It is not necessary to construe the statutory provisions invoked by defendant further than to say that this case is not within such provisions, or affected by them. The statute is penal. If the purchase was made in viola-

tion of the terms of the statute, then plaintiff is guilty of a misdemeanor. The presumption is that he is innocent. The statute does not pretend to prevent attorneys from making investments, or purchasing securities or obligations. It only forbids such purchase 'with intent to bring suit thereon'. The offense rests in the intention. It is not the purchase, but the 'intent to bring suit thereon', which converts an act otherwise lawful into a crime. Such intent is the element which is criminal and vitiates the contract."

It is also suggested that the conveyance from Loy to the Union Securities Company is a quit claim deed and cannot be made the basis of an action by the use plaintiff in the name of the grantor. This deed purports to "convey, grant, remise, release, and quit claim" the property in question. It contains no restrictions or modifying clauses. It failed as a conveyance in part, only because the land was occupied by a person in adverse possession whose rights passed to the defendants herein. The form of the deed does not militate against the right of the use plaintiff to maintain this action in the name of the grantor. That right is not dependent on a warranty of title.

The defendants assert the doctrines of laches and estoppel as bars to the plaintiff's recovery. The deed from Loy to the Union Securities Company is dated July 24, 1941, and was recorded January 19, 1944. This action was commenced June 22, 1945. It is argued that the use plaintiff by maintaining silence and failing to more promptly record his deed is estopped from asserting his title and that failure to more promptly bring the action constitutes laches. The defendant Kessler acquired his purported title through a tax deed from the county and this title he in turn conveyed to the Helms. It does not appear that the purchase of the county's purported tax title by any of the defendants resulted from a belief in or reliance upon any words, acts or silence of the Union Securities Company. Sailer v. Mercer County, 75 ND 123, 26 NW2d 137; Werner v. Werner, 74 ND 565, 23 NW2d 757. Neither can it be said that the delay in the bringing of the action is sufficient to constitute a bar under the equitable principle of laches. The rights of the defendants as title claimants are dependent upon the title acquired by Mercer

County through its tax deed proceedings which, if valid, created a new and complete title under an independent grant from the sovereign authority of the state. Baird v. Stubbins, 58 ND 351, 226 NW 529, 65 ALR 1009; Peterson v. Reishus, 66 ND 423, 266 NW 417, 105 ALR 724; Nelson v. Murton, 68 ND 108, 277 NW 390; Northwestern Mutual Savings & Loan Ass'n v. Hanson, 72 ND 629, 10 NW2d 599. The title acquired by Loy and the Union Securities Company was that of the original owner and still exists in someone unless cut off by valid tax deed proceedings. The county acquired its tax deed on March 1, 1940. The failure of the original owner or his grantees to attack the tax title until this action was commenced does not constitute laches. See Morehouse v. Paulson, 75 ND 524, 28 NW2d 616.

The defendants contend that the Union Securities Company was prohibited from taking title to the land in question by Chapter 10–06, RCND 1943, known as the Corporate Farming Law, and that the deed from Loy is for that reason absolutely void. The Corporate Farming Law was originally adopted as an initiative measure on June 29, 1932. It was entitled "An Act prohibiting corporation farming and relating to corporations acquiring and holding real estate not necessary in the operation of their business." Session Laws 1933, page 494. Section 1 of the Act then read "That all corporations, both domestic and foreign, except as otherwise provided in this act, are hereby prohibited from engaging in the business of farming or agriculture, *and are prohibited from acquiring or holding real estate in excess of that necessary for the conduct of their business, unless the same is acquired in the course of their business by judicial process or operation of law.*"

At the first legislative session following the adoption of the act it was amended in several particulars by Chapter 89, Session Laws ND 1933. Section 1 was amended by the omission of the italicized portions quoted above. Sections 2 and 3 were amended in a manner not material here. Section 4 of the original act was amended by Chapter 111, Session Laws ND 1935. It legalized titles previously acquired by corporations and expressly declared lawful, deeds or other conveyances taken or given in ex-

change for lands previously acquired or in partial or full satisfaction of mortgages, liens or other incumbrances.

The Corporate Farming Law as amended and now incorporated in the 1943 Revised Codes, reads as follows:

"10–0601. *Farming by Domestic and Foreign Corporations Prohibited.* All corporations, both domestic and foreign, except as otherwise provided in this chapter, are hereby prohibited from engaging in the business of farming or agriculture.

"10–0602. *Disposal of Agricultural Lands; Ownership Limitation Covenant Running With Land.* All corporations, both domestic and foreign, which now own or hold rural real estate which was acquired prior to July 29, 1932 and which is used or usable for farming or agriculture, except such as is reasonably necessary in the conduct of their business, shall dispose of the same on or before July 29, 1942, and said corporations may farm and use said real estate for agricultural purposes until such date. The ownership limitation provided by this section shall be deemed a covenant running with the title to the land against any grantee, successor, or assignee of a corporation, which is also a corporation.

"10–0603. *Disposal of Lands Acquired Subsequent to July 29, 1932; Ownership Limitation a Covenant.* Any corporation, either domestic or foreign, which, on or since July 29, 1932, has acquired or hereafter shall acquire any rural real estate, used or usable for farming or agriculture, by judicial process or operation of law or pursuant to section 10–0605, shall dispose of such real estate, except such as is reasonably necessary in the conduct of its business, within ten years from the date that it was so acquired. During said ten year period, the corporation may farm and use such lands for agricultural purposes. The ten year limitation provided by this section shall be deemed a covenant running with the title to the land against any grantee, successor, or assignee of such corporation, which also is a corporation.

"10–0604. *Cooperative Corporations Exempted; When.* Nothing in this chapter shall be construed to prohibit cooperative corporations, seventy-five percent of whose members or stockholders are actual farmers residing on farms or depending prin-

cipally on farming for their livelihood, from acquiring real estate and engaging in cooperative farming or agriculture.

"10–0605. *Title to Farm Lands Acquired by Corporation Since July 29, 1932, Valid.* The title and ownership of any real estate acquired in any manner by any domestic or foreign corporation since the approval and adoption of the initiated law of June 29, 1932 shall be valid for all purposes notwithstanding any provisions in said initiated law contained, subject, however, to all of the provisions now contained in this chapter. It shall be lawful for any corporation, domestic or foreign, subject to the other provisions of this chapter, to take and acquire title to real estate by deed or other conveyance where such deed or conveyance is taken or given in exchange for lands acquired prior to March 7, 1935 or in partial or in full satisfaction of any mortgage, lien, or other encumbrance held or owned by such corporation on such real estate. Any and all deeds and conveyances of real estate taken by any corporation prior to March 7, 1935, either in exchange for lands theretofore acquired or in partial or in full satisfaction of any mortgage, lien or other encumbrance on such real estate, shall be valid for all purposes.

"10–0606. *Land of Noncomplying Corporation Sold by County: Proceeds Paid to Corporation.* In case any corporation, either domestic or foreign, violates any provision of this chapter or fails, within the time fixed by this chapter, to dispose of any real estate to which it has acquired title and which is not reasonably necessary for the conduct of its business, then title to such real estate shall escheat to the county in which such real estate is situated upon an action instituted by the state's attorney of such county, and such county shall dispose of the land within one year at public auction to the highest bidder, and the proceeds of such sale, after all expenses of such proceedings shall have been paid, shall be paid to the corporation which formerly owned the land."

It will be noted that the act does not expressly prohibit corporations from acquiring title to farm lands, although it is possible to argue that the act does so by implication. On the other hand there are very persuasive reasons why that implication should not be read into the law. The first reason is that the original

act contained a specific prohibition against the acquisition of real estate by a corporation which was deleted by the amendment in Chapter 89, Session Laws ND 1933. A second reason is to be found in the provision made for the enforcement of the act in Section 10–0606, RCND 1943. Any corporation that violates the act may be subjected to an escheat of its real estate to the county in which such real estate is situated. In Asbury Hospital v. Cass County, 72 ND 359, 7 NW2d 438 we said with respect to lands held beyond the time prescribed by the statute, "The statute does not purport to divest a corporation of title to land which it holds beyond the prescribed period. It makes such holding the ground for an action to effect the escheat; but the corporation continues to own and hold the property until the title thereto is divested by judgment rendered in the action brought pursuant to the statute. 19 Am Jur p. 399, Sec. 33. The corporation must be made a party to the action. It will have full opportunity to be heard in defense. It goes without saying that judgment to effect escheat may be rendered only if the cause of action is established."

The provision for escheat applies in case the corporation "violates any provision of this chapter or fails, within the time fixed by this chapter, to dispose of any real estate to which it has acquired title and which is not reasonably necessary for the conduct of its business," . . . . Escheat can apply only to lands to which the corporation has acquired title. It applies to all violations of the act and implies the acquisition of title to real estate in violation of the act. It excludes the hypothesis that a grant of farm land to the corporation is void. In that event there could be no escheat. The grant is valid but the property becomes subject to escheat. When we consider the effect of voiding conveyances of farm lands to corporations the wisdom of the escheat provision in this statute becomes apparent. It avoids the uncertainty that would otherwise exist with respect to the titles of corporations to all lands although the act was clearly not intended to apply to all. Its general application is to "any rural real estate, used or usable for farming or agriculture", an undefined, inherently indefinite expression. But a corporation may acquire and hold indefinitely, real estate that is otherwise within

the prohibited category if it "is reasonably necessary in the conduct of its business." Moreover, if the real estate is acquired through certain named processes it may be retained for ten years and only after that period does it become subject to escheat. To make the validity of a grant dependent upon conditions that are not only indefinite, but vary with the divergent facts of each particular case would inject an element of uncertainty into corporate titles to rural real estate in the hands of the corporation or its subsequent grantees.

Another exception that would be hazardous to real estate titles is that applying to cooperative corporations, seventy-five per cent of whose members or stockholders, are actual farmers residing on farms or depending principally on farming for their livelihood. This, like the previous exception, would make the validity of titles depend upon unrecorded and obscure facts were we to hold that under the general provisions of the act corporations could not acquire valid titles to farm lands. To say that the validity of the title acquired by or through a cooperative corporation consisting of one hundred members depends upon seventy-five of them qualifying under the exception, and that if only seventy-four qualify the title is void, would jeopardize the rural real estate titles of cooperatives, and seriously affect their marketability.

The escheat provisions of the act are applicable to all lands acquired or held in violation of the law and affords a remedy of enforcement which can be applied whenever the facts warrant it without jeopardizing the general validity and marketability of titles to rural real estate in the hands of corporations or their subsequent grantees. This we believe was the result sought by the legislature in 1933 when it struck from the statute the provision prohibiting corporations from acquiring real estate. The deed from Loy to the Union Securities Company was not void under the Corporate Farming Law.

With respect to the tax deed obtained by Mercer County upon which the validity of the defendants' title depends, the trial court found that the notice of expiration of the period of redemption which resulted in the issuance of the tax deed included in the amount required to redeem, subsequent taxes that had been delin-

quent for less than three years prior to the date of the notice. The inclusion of these subsequent taxes rendered the notice void and likewise the tax deed. Knowlton v. Cove, ante, 478, 37 NW2d 343; Kelsch v. Miller, 73 ND 405, 15 NW2d 433, 155 ALR 1186; Baeverstad v. Reynolds, 73 ND 603, 18 NW2d 20. The defendants on this appeal do not challenge the findings of the trial court in this respect, but rely upon adverse possession which they assert the plaintiff has no right to disturb for the various reasons that we have heretofore considered. The trial court having correctly determined questions of law and fact raised by the defendants the judgment is affirmed.

NUESSLE, C. J., CHRISTIANSON and BURKE, JJ., and GRONNA, Dist. J., concur.

BURR, J., did not participate.