**COAL HARBOR STOCK FARM, INC., et al., Plaintiffs and Respondents,**

v.

**Ben MEIER, as the Secretary of State of the State of North Dakota and his successors in office, Defendant and Appellant.**

Civ. No. 8719.

Supreme Court of North Dakota.

Sept. 1, 1971.

Rehearing Denied Nov. 16, 1971.

Helgi Johanneson, Atty. Gen., and John E. Adams, Asst. Atty. Gen., Bismarck, for defendant and appellant.

Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, for plaintiffs and respondents.

TEIGEN, Justice.

The Secretary of State has appealed from a summary judgment adjudging that he erred in refusing to approve the proposed articles of incorporation and to issue a certificate of incorporation for a proposed corporation to be named Coal Harbor Stock Farm, Inc. This summary judgment directs the Secretary of State to approve the proposed articles and to forthwith issue a certificate of incorporation to effectuate the corporate existence of the proposed corporation.

The Secretary of State refused to approve the proposed articles on the ground

that the proposed corporation was being formed for a purpose prohibited by law. The facts were stipulated. The incorporators, G. C. Robinson, Dave M. Robinson, Majel M. Robinson and Sheila C. Robinson, residents of North Dakota, sought to incorporate, pursuant to the North Dakota Business Corporation Act (Chapters 10–19 through 10–23, N.D.C.C.), a business corporation to be known as Coal Harbor Stock Farm, Inc., for the purpose of engaging in the "business of farming or agriculture solely in North Dakota" with powers "to acquire rural real estate used or usable for farming or agriculture solely in North Dakota, reasonably necessary in the conduct of the business of farming or agriculture."

The Secretary of State, in rejecting the articles, gave notice that he is of the opinion that the purpose of the proposed corporation, as set forth in its proposed articles "to engage in the business of farming or agriculture, solely in North Dakota," is contrary to the prohibition contained in Section 10–06–01, N.D.C.C., which provides:

"All corporations, both domestic and foreign, except as otherwise provided in this chapter, are hereby prohibited from engaging in the business of farming or agriculture."

Based on this statute the Secretary of State found that the proposed articles were not in conformity with the requirements of Section 10–19–54, N.D.C.C., which requires that matters set forth in articles of incorporation shall be in conformity with the law, and determined that the corporation was being formed for an unlawful corporate purpose, contrary to Section 10–19–03, N.D.C.C., which authorizes that corporations be formed for lawful purposes.

It is the duty of the secretary of state to issue a certificate of incorporation if he finds that the articles of incorporation conform to law. Section 10–19–54, N.D.C.C.

If the secretary of state fails to approve articles of incorporation, the persons who filed them may appeal to the district court of the county in which the registered office of such corporation is proposed to be located, whereupon the matter shall be tried de novo by the district court. The district court shall either sustain the action of the secretary of state or direct him to take such action as the court may deem proper. An appeal to this court is authorized from the order or judgment of the district court. Section 10–23–12, N.D.C.C.

The proceedings in the instant case were treated by the parties and the trial court as an appeal to the district court under the above cited section of the Century Code, and an issue which had been initially raised objecting to the form of the proceedings instituted has been dropped.

The matter was submitted in summary judgment proceedings on a stipulation of facts to the district court. The district court notes that Section 10–06–01, N.D.C.C., which we have quoted above, standing alone, purports to prohibit corporations from engaging in the business of farming or agriculture. However, the district court held that this prohibition is completely rebutted by the following emphasized parts of other sections to the Corporate Farming Law:

"All corporations, both domestic and foreign, which now own or hold rural real estate which was acquired prior to July 29, 1932 and which is used or usable for farming or agriculture, *except such as is reasonably necessary in the conduct of their businesses,* shall dispose of the same on or before July 29, 1942, and said corporations may farm and use said real estate for agricultural purposes until such date. The ownership limitation provided by this section shall be deemed a covenant running with the title to the land against any grantee, successor, or assignee of a corporation, which is also a corporation." Section 10–06–02, N.D.C.C. [Emphasis added.]

"Any corporation, either domestic or foreign, which, on or since July 29, 1932,

has acquired or hereafter shall acquire any rural real estate, used or usable for farming or agriculture, by judicial process or operation of law or pursuant to section 10–06–05, shall dispose of such real estate, *except such as is reasonably necessary in the conduct of its business,* within ten years from the date that it was so acquired. During said ten year period, the corporation may farm and use such lands for agricultural purposes. The ten year limitation provided by this section shall be deemed a covenant running with the title to the land against any grantee, successor, or assignee of such corporation, which also is a corporation." Section 10–06–03, N.D.C.C. [Emphasis added.]

"In case any corporation, either domestic or foreign, violates any provision of this chapter or fails, within the time fixed by this chapter, to dispose of any real estate to which it has acquired title and *which is not reasonably necessary for the conduct of its business,* then title to such real estate shall escheat to the county in which such real estate is situated upon an action instituted by the state's attorney of such county, and such county shall dispose of the land within one year at public auction to the highest bidder, and the proceeds of such sale, after all expenses of such proceedings shall have been paid, shall be paid to the corporation which formerly owned the land." Section 10–06–06, N.D.C.C. [Emphasis added.]

It was stipulated and agreed: "That in the Articles of Incorporation, under Section 2(a), the power is proposed to 'acquire rural real estate used or usable for farming or agriculture solely in North Dakota, reasonably necessary in the conduct of the business of farming or agriculture;' that an indispensable prerequisite to engaging in the business of farming or agriculture is the acquisition of some rural real estate; that farms or ranches cannot be operated without rural real estate." It was also stipulated that the individuals forming the

corporation are farmers and that if the corporation is formed the future business of the corporation will also be farming.

The trial court found that the purpose and intent of the Corporate Farming Law (Chapter 10–06, N.D.C.C.) is to prohibit farming by corporations whose main purpose is other than farming or ranching, and that the Coal Harbor Stock Farm, Inc., was being formed for the specific purpose of engaging in farming which is not prohibited by the law. The trial court also notes that Section 10–06–05, N.D.C.C., which was construed in Loy, for Use and Benefit of Union Securities Co. v. Kessler, 76 N.D. 738, 759, 39 N.W.2d 260, 270, does not prohibit corporations from acquiring title to farm lands.

In its conclusions of law, the trial court holds as follows:

## "V.

"That the purpose of the proposed incorporation of the Coal Harbor Stock Farm, Inc., as contained in the Articles of Incorporation is a valid and legal purpose, within the express exception contained in the Corporate Farming Act, Chapter 10–06 of the North Dakota Century Code.

## "VI.

"That by its terms, Chapter 10–06 prohibits a corporation from holding and farming rural real estate *only* when such real estate is not reasonably necessary for the conduct of its business. The law, therefore, specifically provides that a corporation may farm and hold rural real estate when such rural real estate is reasonably necessary for the conduct of its business.

## "VII.

"That the holding and farming of rural real estate is not only reasonably necessary to the conduct of the business of the plaintiff, Coal Harbor Stock Farm, Inc., but is also an indispensable pre-

requisite to the accomplishment of the stated purpose of the corporation to 'engage in the business of farming or agriculture solely in North Dakota.'"

We do not agree with the trial court's construction of the Act.

■ This court, in three previous opinions, construed and applied the Corporate Farm Law. The opinions are: Asbury Hospital v. Cass County (two cases), 72 N.D. 359, 7 N.W.2d 438 (1943), and 73 N.D. 469, 16 N.W.2d 523 (1944) [both were affirmed by the United States Supreme Court in 326 U.S. 207, 66 S.Ct. 61, 90 L.Ed. 6]; Loy v. Kessler, *supra*. Although the precise question before us in this case was not at issue in those cases, we find the key to the solution of this case lies in the first *Asbury* case. Judge Christianson, the author of that opinion, wrote:

*"Corporations are organized for the purpose of carrying on and conducting certain specified business or activity. They are granted certain powers to be used to perform the functions for which they are organized. There is an obvious distinction between the objects or business which a corporation is organized to accomplish or conduct and the powers with which it is vested for the purpose of conducting the business or attaining its objects.* When the statute provides that there shall be excepted from its operation such real estate 'as is reasonably necessary in the conduct of' the business of a corporation, it means such real estate as is reasonably necessary for carrying on the business or activity which the corporation was created to carry on. [Citations omitted.]

"In order for a foreign corporation to be 'doing business' or 'transacting business' in a state—(within the purview of laws imposing conditions on its right to do business in such State)—'there must be a doing of some of the works, or an exercise of some of the functions, for which the corporation was created and

not merely what the corporation might have authority to do. *A distinction, in other words, is to be observed in this connection between the purposes of a corporation and its powers. So the doing of an act which, though within the power of the corporation, is not a part of the business which it was authorized to conduct, is not doing business.'* [Citation omitted.]" [Emphasis added.]

The prohibition "from engaging in the business of farming or agriculture" contained in Section 10–06–01, N.D.C.C., embraces "all corporations * * * except as otherwise provided in this chapter." The only corporations which are excepted from the provisions of the chapter are qualified co-operative corporations as provided in Section 10–06–04, N.D.C.C. This section provides:

"Nothing in this chapter shall be construed to prohibit co-operative corporations, seventy-five per cent of whose members or stockholders are actual farmers residing on farms or depending principally on farming for their livelihood, from acquiring real estate and engaging in co-operative farming or agriculture."

The prohibition contained in Section 10–06–01, N.D.C.C., enjoins "the *business* of farming or agriculture" by corporations. Thus, construing these sections together, all corporations, both domestic and foreign, except co-operative corporations seventy-five per cent of whose members or stockholders are actual farmers residing on farms, or depending principally on farming for their livelihood, are prohibited from engaging in the business of farming or agriculture. So construed, the Coal Harbor Stock Farm, Inc., which is not being formed as a co-operative corporation, is prohibited from engaging in the business of farming or agriculture.

Sections 10–06–02 and 10–06–03, N.D.C.C., create a limitation on the *power* of corporations to own or hold rural real estate. These sections require that farm lands owned by corporations on the ef-

fective date of the law, or subsequently acquired, must be disposed of within ten years unless it is "reasonably necessary in the conduct of" its corporate owner's business. During the ten year period, permission is granted to the corporate owner to farm the land. If non-excepted land is not disposed of within the period provided, it becomes subject to escheat to the county upon an action instituted by the state's attorney, as provided by Section 10–06–06, N.D.C.C. The business of the corporation to qualify the land for the exception must be a business authorized by law and not a business which is prohibited by law. The business of engaging in farming or agriculture by a corporation was prohibited by the enactment of Section 10–06–01, N.D.C.C.

Thus rural real estate which is owned by a corporation organized for the purpose of engaging in farming or agriculture does not qualify for the exception.

In other words, Section 10–06–01, N.D.C.C., prohibits all corporations, except the qualified co-operative corporations, from engaging in the business of farming or agriculture. Sections 10–06–02 and 10–06–03, N.D.C.C., limit the power of corporations to own, hold and use rural real estate and do not conflict with the prohibition from engaging in the business of farming or agriculture as contained in Section 10–06–01, N.D.C.C. There is no conflict; the Act is clear and unambiguous.

Section 10–19–03, N.D.C.C., provides that corporations may be organized under the Business Corporation Act for any lawful purpose.

"Where the statutes authorize the formation of corporations for 'any lawful purpose,' the word 'unlawful,' as applied in this connection, is not used exclusively in the sense of malum in se or malum prohibitum; it is also used to designate powers which corporations are not authorized to exercise, or contracts which they are not authorized to make, or acts which they are not authorized to do—in other words, such acts, powers, and contracts as are ultra vires." 18 Am.Jur.2d Corporations, Section 33.

Section 10–19–54, N.D.C.C., places the duty upon the secretary of state to issue certificates of incorporation only on condition that he finds that the articles of incorporation conform to law. Section 10–19–03, N.D.C.C., authorizes the formation of a corporation for lawful purposes.

We are agreed that Section 10–06–01, N.D.C.C., clearly prohibits a corporation from engaging in the business of farming or agriculture and that the proposed articles of incorporation of Coal Harbor Stock Farm, Inc., describes a business which is prohibited and, therefore, unlawful. The Secretary of State did not err in refusing to issue the certificate of incorporation.

The summary judgment of the district court is reversed and it is directed to enter a summary judgment in conformity with this opinion.

STRUTZ, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.

## ON PETITION FOR REHEARING

TEIGEN, Justice.

The plaintiffs, who are the respondents in a petition for rehearing, reargue several points previously raised, argued and considered by this court. Succinctly stated, these points are: (1) that the business prohibition clause contained in Section 10–06–01, N.D.C.C., is not without limitation and that the exception, in addition to being applied to co-operative farms, must also be held applicable to Sections 10–06–02 and 10–06–03, N.D.C.C.; (2) that said Sections 10–06–02, 10–06–03 and 10–06–06, N.D.C.C., empower any corporation, including a corporation formed for the purpose of engaging in the business of farming, to own farm land and to engage in the business of farming; and (3) that, since the Corporate Farming Law provides that any corporation may farm and own rural real estate for a

period of ten years, there is no absolute ban on corporate farming. The points listed are merely a restatement of arguments which were made in the original presentation to this court and which were considered by this court before its opinion issued.

Rule 16 of the Rules of Practice in the Supreme Court of North Dakota sets forth that a petition for rehearing "must not be a restatement or reargument of matters contained in the brief," and that such petition must distinctly point out something which has been overlooked in the statutory provisions or the controlling principles of law, or which was not called to the attention of the court on argument or in the briefs. Parker Hotel Company v. City of Grand Forks, 177 N.W.2d 764 (N.D.1970); Fish v. France, 71 N.D. 499, 2 N.W.2d 537 (1942).

However, the petitioners in this petition have raised two new points which were not raised or argued at the time of the original presentation of the matter to this court; neither were these matters raised in the summary judgment proceedings in the trial court. Petitioners now argue that to deny them a certificate of incorporation deprives them of their right to equal protection of the law under the State and Federal Constitutions, and grants a special privilege to nonfarming corporations; that this is in violation of Sections 1, 11 and 20 of the North Dakota Constitution and Section 1 of the Fourteenth Amendment to the Federal Constitution. The second point raised is that the Corporate Farming Law, as interpreted, violates Section 70 of the North Dakota Constitution which prohibits special legislation.

■ We will first consider the argument that Sections 1, 11 and 20 of our constitution and Section 1 of the Fourteenth Amendment to the Federal Constitution are violated.

Section 1 of the North Dakota Constitution provides:

"All men are by nature equally free and independent and have certain inalienable rights, among which are those enjoying and defending life and liberty; acquiring, possessing and protecting property and reputation; and pursuing and obtaining safety and happiness."

Section 11 of the North Dakota Constitution provides:

"All laws of a general nature shall have a uniform operation."

Section 20 of the North Dakota Constitution provides:

"No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens."

Section 1 of the Fourteenth Amendment to the Federal Constitution provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The petitioners contend that the Corporate Farming Law, as construed by our decision, has denied them equal protection of the law as guaranteed by the above constitutional provisions. In support of this argument they argue that Sections 10–06–03 and 10–06–04, N.D.C.C., allow a general business corporation to own and farm rural real estate for a ten-year period. Yet the petitioners' proposed corporation would not qualify for that limited exception since the specific purpose for which

it was intended to be formed was to engage in the business of farming. They reason the effect is that a nonfarm corporation, such as General Motors or the Ford Motor Company, may own and farm rural real estate for ten years but the same privileges are denied to the petitioners' proposed corporation because its business would be that of farming and ranching. They argue that our interpretation of the Corporate Farming Law allows a corporation to farm land which is not reasonably necessary in the conduct of its business for a ten-year period, yet disallows a corporation formed for the purpose of engaging in the business of farming from farming the same land for a similar period. They argue that this incongruity constitutes a denial of equal protection. Therefore the petitioners claim that, under the equal protection feature of the State and Federal Constitutions, they must be permitted to form a corporation to engage in the business of farming, although the corporation may be required to dispose of such farm lands as are not reasonably necessary in the conduct of such business after ten years. However, such lands as are reasonably necessary in the conduct of their business of farming or agriculture need not be disposed of within the ten-year limitation period. They argue that there is no difference that would justify the resulting discrimination. They state:

"In short, it would constitute an invidious discrimination against the respondents to deny them the privilege, as other corporations now have, to own and farm any tract of rural real estate for at least a ten year period at the end of which time the crucible under the 'reasonably necessary' test must be met."

They ask what "evil" is to be avoided in prohibiting a corporation from engaging in the business of farming or agriculture and permitting a corporation engaged in another type of business to farm for a period of ten years.

Section 131 of the North Dakota Constitution provides:

" * * * the legislative assembly shall provide by general laws for the organization of all corporations hereafter to be created, and any such law, so passed, shall be subject to future repeal or alteration."

Section 137 of the North Dakota Constitution provides:

"No corporation shall engage in any business other than that expressly authorized in its charter."

Section 10–06–01, N.D.C.C., provides:

"All corporations, both domestic and foreign, except as otherwise provided in this chapter, are hereby prohibited from engaging in the business of farming or agriculture."

We pointed out in the original opinion that a distinction exists between the purposes of a corporation and its powers. The Corporate Farming Law clearly prohibits any corporation, except co-operative corporations, seventy-five per cent of whose members or stockholders are actual farmers residing on farms or depending principally on farming for their livelihood, from engaging in the business of farming or agriculture. The State's objective in enacting the Corporate Farming Law is to prohibit all corporations, except qualified co-operative corporations, from engaging in the business of farming or agriculture. Thus if the General Motors Corporation and the Ford Motor Company, mentioned by the petitioners, are authorized under their foreign charters to engage in the business of farming in addition to the manufacture and sale of motor vehicles, such corporations are, under the Corporate Farming Law, prohibited from engaging in the business of farming or agriculture in North Dakota, and the ten-year ownership limitation provided by Sections 10–06–02 and 10–06–03, N.D.C.C., would not be applicable unless it could be shown that such lands

were acquired or held for a purpose authorized under their charters, other than engaging in the business of farming or agriculture, in which event the ten-year limitation upon ownership would be operative. Thus all corporations, both domestic and foreign, are prohibited from engaging in the business of farming or agriculture, irrespective of the purpose, or purposes, for which they were formed, with the single exception of a qualified co-operative corporation as defined in Section 10–06–04, N.D.C.C.

The United States Supreme Court in Asbury Hospital v. Cass County, 326 U.S. 207, 66 S.Ct. 61, 90 L.Ed. 6 (1945), held:

"The legislature is free to make classifications in the application of a statute which are relevant to the legislative purpose. The ultimate test of validity is not whether the classes differ but whether the differences between them are pertinent to the subject with respect to which the classification is made."

It affirmed the holdings of this court in its decisions in that case as reported in 72 N.D. 359, 7 N.W.2d 438 (1943) and 73 N.D. 469, 16 N.W.2d 523 (1944). In that case our court held that the provisions of the Corporate Farming Law excepting lands owned and held by a corporation whose business is dealing in farm lands and lands belonging to co-operative corporations, seventy-five per cent of whose members or stockholders are farmers residing on farms or who depend principally upon farming for their livelihood, do not violate the equal protection clause of the United States Constitution. The United States Supreme Court, in *Asbury,* stated:

"* * * We cannot say that there are no differences between corporations generally and those falling into the excepted classes which may appropriately receive recognition in the legislative application of a state policy against the concentration of farming lands in corporate ownership.

"* * * Statutory discrimination between classes which are in fact different must be presumed to be relevant to a permissible legislative purpose, and will not be deemed to be a denial of equal protection if any state of facts could be conceived which would support it." Asbury Hospital v. Cass County, 66 S.Ct. 61, 65.

Courts are not concerned with the wisdom of legislation. It is not for us to determine whether the act banning corporate farming as a business is a wise or an unwise enactment. We are concerned only with the legislative power.

It is a matter of common knowledge that North Dakota is an agricultural state. Its principal industry is that of farming. It is also common knowledge that prior to the enactment of the Corporate Farming Law there were corporations in existence which were organized and operated for the purpose of engaging in the business of farming and agriculture. These corporations farmed huge tracts of land in this State in competition with individual farmers. It must be presumed that the people of the State, before enacting the Corporate Farming Law by initiated measure in 1932, and the legislators, when they amended the law in 1933, informed themselves and determined that to prohibit corporate farming as a business, except for qualified co-operatives, was necessary to protect the economy of the State and the welfare of its citizens. At the same time they recognized that corporations engaged in a business other than farming were empowered to acquire and hold rural real estate suitable for the purpose of farming and, therefore, the tenure of such holdings was limited for a prescribed maximum number of years to enable these corporations to dispose of their holdings, but excepting from the limitation such lands as were reasonably necessary in the conduct of their businesses. This exception relates to a business other than farming or agriculture. Thus the exception would be opera-

tive as to lands acquired for a future plant site, or acquired as the result of the foreclosure of a mortgage, or for such other business of the corporation, authorized under its charter, the purpose of which is to engage in a business other than the business of farming or agriculture. A corporation not formed for the purpose of engaging in the business of farming or agriculture cannot engage in farming as a business as no corporation shall engage in any business other than that expressly authorized by its charter. Section 137, North Dakota Constitution. Section 10–06–01, N.D.C.C., effectively prohibits the issuance of a charter to a corporation to engage in the business of farming or agriculture, except to co-operative corporations which qualify under Section 10–06–04, N.D.C.C., which section provides that the Corporate Farming Law shall not be construed to prohibit co-operative corporations, seventy-five per cent of whose members or stockholders are actual farmers residing on farms or depending principally on farming for their livelihood. The exemption of co-operatives, by this section, is a reasonable classification and does not deny other corporations equal protection of the law within the meaning of the Fourteenth Amendment to the United States Constitution. Asbury Hospital v. Cass County, *supra*.

Thus the people, by the initiated act, and the legislature, by amendment to the initiated act, have classified corporations organized to engage in the business of farming or agriculture as a separate class of corporations which are prohibited from doing business in this State, by declaring that the business of farming or agriculture is an unlawful corporate purpose except when conducted by a qualified co-operative corporation. Under the circumstances, we find this to be a reasonable classification on the basis that the difference between a corporation organized for the purpose of engaging in farming or agriculture and a corporation organized for other business purposes is pertinent to the subject to which the classification is made, is relevant to a permissible legislative purpose, and is not a denial of equal protection under either the State or Federal Constitution.

"Corporations as creatures of the law may, within reasonable limits, be divided into classes, and each class given such rights, capacities, and powers as the legislature may see fit. For this reason a corporation may not necessarily have the right to complain of a discrimination in favor of other classes of corporations or that all or any of the rights of natural persons have not been given to it. Generally speaking, the action of the state in so classifying corporations and in conferring different powers upon them is not in contravention of the Fourteenth Amendment of the Federal Constitution. Legislation which applies equally to all corporations in like circumstances and which makes a natural and reasonable classification is not vicious class legislation. If a classification of corporations for the purpose of legislation is natural and reasonable and based on some distinctive difference in the business of the several classes, a difference peculiar to and inhering in its very nature, it is valid and will be sustained. In order, however, to justify diversity of treatment of corporations, the classification must be founded on differences either defined by the Constitution or such as are natural or intrinsic and reasonable." 16 Am.Jur.2d, Constitutional Law, Section 519.

We believe there is a reasonable basis for the classification made, and that the people and the Legislature did not make such an arbitrary or unreasonable discrimination as to constitute a denial of the equal protection of the law or the requirement that all laws of a general nature shall have a uniform operation.

■ Lastly, the petitioners contend that our construction of the Corporate Farming Law violates Section 70 of the North

Dakota Constitution. This section provides:

"In all other cases where a general law can be made applicable, no special law shall be enacted; nor shall the legislative assembly indirectly enact such special or local law by the partial repeal of a general law, but laws repealing local or special acts may be passed."

In support of their contention that the Corporate Farming Law, as interpreted in our opinion, violates this section of the Constitution, the petitioners argue that they, as citizens, are not treated as other citizens under like circumstances and conditions. They say that this is so because "other citizens may incorporate a general business corporation and engage in the *business* of farming on any particular piece of real estate for at least ten years while the respondents are denied the same privilege because of the fact that they have chosen to designate the purpose of their corporation as that of farming." [Emphasis added.] The premise of this argument is false. A general business corporation may not engage in the *business* of farming or agriculture. Section 10–06–01, N.D.C.C., specifically prohibits all corporations, except qualified co-operatives, from engaging in the business of farming or agriculture in this State. The Corporate Farming Law applies equally to all citizens, without any discrimination, who desire to form a business corporation, and not a co-operative, for the purpose of engaging in the business of farming or agriculture. It operates alike on all persons who come within its provisions.

For the reasons stated herein, the petition for rehearing is denied.

STRUTZ, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.